Glenn W. THOMPSON, Plaintiff,

v.

Tom WOODALL, As Chairman of the Madison County Democratic Executive Committee, et al., Defendants.

Civ. A. No. 86–C–1018–S.

United States District Court, N.D. Alabama, S.D.

June 19, 1986.

Clarence F. Rhea, Rhea, Boyd & Rhea, Gadsden, Ala., for plaintiff.

Julian Butler, Huntsville, Ala., for defendants.

## MEMORANDUM OF OPINION

CLEMON, District Judge.

In this action under 42 U.S.C. § 1983, plaintiff Glenn Thompson seeks to be included on the democratic primary ballot as a candidate for Place No. 12 on the Madison County Democratic Committee.[1] He maintains that he was a duly certified candidate for that position, but that the defendants illegally and unconstitutionally decertified him following a challenge to his candidacy. For the reasons which follow, the Court finds and concludes that it lacks jurisdiction for want of a justiciable controversy.

### I.

Plaintiff has been a naturalized citizen of the United States since 1954. He moved to Madison County, Alabama, from New York, approximately eleven years ago. Although he has been affiliated with the democratic party for some 31 years, he has not previously sought any position in the democratic party organization.

Sometime in March, 1986, Mike Carr, a "LaRouche organizer" of Atlanta, Georgia, telephoned plaintiff and "broached the subject that [plaintiff] should be a candidate." DX 2, p. 58. Carr and his wife came to Madison County and brought the Qualification Form to plaintiff on the day before the filing deadline. Plaintiff signed the form and completed the lower section of it. The Carrs completed the top portion of the form, which declared the position for which plaintiff was to be a candidate. The Carrs then took plaintiff to have his signature notarized. Afterwards, plaintiff turned over to the Carrs the completed form and the $25 qualifying fee.

Plaintiff's qualifying papers were actually filed by Mrs. Carr on the last day for qualifying for the primary elections. In filing the papers, Mrs. Carr identified herself as representing the National Democratic Policy Committee ("NDPC"). The papers were accepted by the county democratic party and plaintiff was certified as a candidate for the position. DX 5.

Only one other person was certified for Place No. 12–a Donald Outland.

Within ten days after plaintiff's qualifying papers were filed, his candidacy was challenged by a Donald Heflin. Basically, the challenge was based on plaintiff's loyalty *vel non* to the democratic party. Heflin asserted that Thompson had been recruited and promoted by Lyndon LaRouche's NDPC; that Thompson's qualifying fee had been paid by NDPC members;[2] that LaRouche had run as a third party candidate in the last election and subsequently denounced the democratic party; and that since the position sought by plaintiff is a party office rather than a public office, a "higher standard of Democratic Party loyalty should be applied." DX 7.

A hearing on the challenge was held by a subcommittee of the county democratic executive committee. At the hearing, Heflin presented evidence that in 1984, Lyndon H. LaRouche had been an independent candidate for the presidency. LaRouche's NDPC ran 2,000 candidates for various offices around the country in 1984. In the same year, LaRouche accused the democratic presidential candidate of being a "Soviet secret police agent of great influence." He raised $8.1 million in 1984. DX 5. At the conclusion of Heflin's evidence, plaintiff voluntarily took the witness stand and testified. Plaintiff's counsel inquired of him:

Q. All right. And do you recall voting in the [last presidential] election?

---

1. This lawsuit was filed on May 28, 1986, and heard on June 2, 1986. The primary elections were held on June 3rd; and runoff elections are scheduled for June 24th. The parties agreed that should plaintiff prevail in this action, his name could be ordered to be placed on the June 24th ballot.

2. This ground of the challenge is meritless, as shown by the evidence.

A. Yes, I voted in the primary election in Madison.

Q. And do you mind telling us who you voted for?

A. John Glenn.

DX 2, p. 54.

On cross examination, Heflin's counsel reminded plaintiff that he had testified on direct examination of voting for John Glenn in the democratic primary. He proceeded to ask, "[D]id you vote in the 1984 general election in November on which the candidates for electors, presidential electors, were on the ballot?" *Id.*, pp. 59, 60. Plaintiff's counsel objected, on the ground that the question is "an improper inquiry.... It does not contribute anything to the deliberations of this committee as to whom he voted for." *Id.* The subcommittee chairman ruled that since plaintiff had initially raised the question of his 1984 vote, it was proper to cross-examine him on that issue. It was at that point that plaintiff answered, "I didn't like Walter Mondale so, I voted for Reagan." *Id.* He admitted, without objection, that in effect he had been recruited by NDPC to run for Place No. 12, and that since 1984, he has been associated with and made several financial contributions to NDPC. *Id.*, 59–72.

After hearing the evidence, the subcommittee voted to uphold Heflin's challenge to plaintiff's candidacy. On appeal by plaintiff to the State democratic executive committee, the decision was sustained.

The rules of the state democratic party are applicable to the Madison County democratic executive committee. The county committee has "the responsibility of discharging Democratic Party affairs within the County subject to the discretion of the State Committee." PX 2, p. 5.

The applicable rule at issue in this case provides:

Persons.... shall not be permitted to qualify as a candidate for nomination or election to public or party office as a

democrat in any elections if they did not support the nominees of the Democratic Party in all Special or General Elections during the past four years.

PX 2, last page. If persons who did not support the party's nominees in the last general election (other than elected public or party officials) nonetheless desire to run as democrats, they must state

publicly and in writing to the Chairman of the State Democratic Executive Committee that they wish to become a member in good standing of the Democratic Party of Alabama and that in the future they will support the Democratic Party and will be loyal to the Democratic Party and its nominees for public office....

*Id.*

This rule was adopted pursuant to § 17–16–13 of the *Code of Alabama of 1975*, which provides that "... every governing body of a party shall have the right, power and authority to fix and prescribe the political or other qualifications of its own members and shall, in its own way, declare and determine who shall be entitled and qualified ... to be candidates therein...." The statute further provides that the state executive committee may fix "such qualifications as it may deem necessary for persons desiring to become candidates for nomination to offices at a primary election." *Id.* In *Knight v. Gray*, 420 So.2d 247 (Ala. 1982), the Supreme Court held that a political party has the right to hear pre-primary challenges under this statute.

At the outset, it is important to define the parameters of the issues in this case. First, the case does not involve plaintiff's right to vote in the democratic primary or runoff. Nor does it involve plaintiff's right to run for *public office* as a Democrat.[3] It does not involve invidious discrimination based on impermissible classifications.

It does involve plaintiff's right *vel non* to run for a position on the local governing board of the democratic party; and if such right exists, the extent to which conditions

---

**3.** The rule cited above is surely applicable to nominees for public office; but this plaintiff

· does not seek a public office.

may be attached to the exercise of the right. Of necessity, the case raises the countervailing issue of first amendment free speech and associational rights of political parties.

In *Wymbs v. Republican State Exec. Comm. of Fla.*, 719 F.2d 1072 (11th Cir. 1983) our circuit wrote:

A political party and its members also "enjoy a constitutionally protected right of political association.... Moreover, ']a[ny interference with the freedom of a party is simultaneously an interference with the freedom of its adherents. *Cousins*, [*v. Wigoda* ], 419 U.S. [477] at 487, 95 S.Ct. [541] at 547 [42 L.Ed.2d 595] (1975), quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 250, 77 S.Ct. 1203, 1212, 1 L.Ed.2d 1311 (1957).

* * * [*Democratic Party v. Wisconsin ex rel* ] LaFollette [450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981) ] instructs that,

[t]he freedom to associate for the "common advancement of political beliefs" necessarily presupposes the freeedom to identify the people who constitute the association....

    *     *     *     *     *     *

[A] State, or a court, may not constitutionally substitute its own judgment for that of the Party. A political party's choice among the various ways of determining the makeup of a State's delegation to the party's national convention is protected by the Constitution.

450 U.S. at 122, 123–24, 101 S.Ct. at 1019–20 (citations omitted).

The same rationale applies to positions on the governing boards of political parties.

■ Based on *Wymbs*, this is the classic situation in which a federal court should stay its hand. The plaintiff has not been denied access to party office by any invidious means—he could have filed a statement with the chairman of the state democratic party affirming his status as a democrat and his pledge to support and be loyal to democratic party nominees in the future. He chose not to do so; but rather to insist that while supporting another political party, and voting for the candidate of yet another party, he has a constitutional right to hold office on the governing local board of the democratic party. To provide the relief which plaintiff requests would clearly require this Court "to engage in political party policy making beyond its role in society" and beyond its role as an Article III court. *Wymbs*, at 1082. This Court must decline that invitation.

■ Accordingly, judgment will be entered in favor of the defendants and against the plaintiff.[4]

---

4. Since the Court concludes that the controversy in this case is not a justiciable one, it is unnecessary to address plaintiff's pendant state law claim that he was forced to compromise the secrecy of his ballot. To the extent that the claim is asserted as a federal constitutional claim, it must be rejected. In the first place, assuming the existence of such a federal privilege, it was surely waived when plaintiff voluntarily disclosed that he has voted for John Glenn in the democratic primary. Moreover, under FRE 611(b), since plaintiff himself raised the issue of having voted in the 1984 election, defendants were entitled to pursue it on cross-examination.