Albert **TURNER**, et al., Plaintiffs,

v.

William **WEBSTER**, et al., Defendants.

Civ. A. No. 85–P–157–W.

United States District Court,
N.D. Alabama, W.D.

June 25, 1986.

Henry Sanders/Carlos A. Williams/J.L. Chestnut, Jr., Chestnut Sanders Sanders & Turner, Selma, Ala., Margaret Carey/Charles Victor McTeer, Center for Constitutional Rights, McTeer & Bailey, Greenville, Miss., Mortin Stavis/Margaret Ratner, Center for Constitutional Rights, New York City, for plaintiffs.

Charles Graddick, Susan McKinney, David Christy, Office of the Attorney General, Montgomery, Ala., for Auburtin, Snoddy, Harwell & McLeed.

Before VANCE, Circuit Judge, POINTER, Chief District Judge, and PROPST, District Judge.

## OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

VANCE, Circuit Judge:

In this case we are asked to determine whether county election officials in Alabama, some acting pursuant to a state court order, brought about a change in a voting standard, practice or procedure subject to preclearance under section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, by marking absentee ballots in a manner which identified the persons casting the ballots. We conclude that this conduct was subject to preclearance. We therefore grant summary judgment for plaintiffs and enjoin defendants from continuing the practice without obtaining preclearance.

### I.

Defendants do not contest the following allegations set forth in plaintiffs' complaint:

25. On September 4, 1984, four (4) candidates seeking election to county office in Perry County, Alabama in a primary election held on that same date filed their complaint in the Circuit Court of Perry County, Alabama requesting an order commanding the absentee election manager for the Demoncratic primary election and other absentee election officials in Perry County to affix a corresponding identifying mark onto each absentee ballot and accompanying affidavit envelope and absentee ballot envelope that would readily identify the person casting said absentee ballot. In response to this complaint, on that same date, September 4, 1984, Judge Ann Farrell McKelvy of the Circuit Court of Perry, Alabama entered an order, without hearing, granting the requested relief for the express purpose of making each absentee ballot cast in Perry County identifiable as the ballot of a particular voter so the voting choices of each absentee voter could be determined.

26. Thereafter, on September 4, 1984, Perry County election officials implemented the Circuit Court's order by numbering each absentee ballot and its accompanying absentee envelopes including the affidavit envelope containing the voter's signature and other identifying references and information, with corresponding numbers so that each ballot choice could be readily identified as the vote of a particular voter.

27. In September 1984, election officials in Greene County, Alabama also instituted a system of numbering absentee ballots and absentee ballot envelopes so that each ballot and each vote was identifiable as a particular voter. On information and belief, the Circuit Clerk of Greene County implemented said numbering system at the request of District Attorney Nathan Watkins whose jurisdiction included Greene County, Alabama.

28. In preparation for the November 6, 1984 election, the Circuit Clerk of Sumter County and/or other election officials have initiated a system of placing corresponding numbers on all absentee ballots and absentee ballot envelopes before said ballots are mailed to the absentee voter so that the vote of each absentee voter is readily identifiable. Members of the Sumter County Commission, which is all Black, did not authorize said change and were never officially notified of the intent to implement or the implementation of the system to number absentee ballots. Plaintiffs are presently unaware of any authority relied upon for making this change in voting and/or election procedure.

The parties further agree that the challenged ballot numbering procedure was not submitted to the Attorney General or the United States District Court for the District of Columbia for preclearance under the Voting Rights Act.

## II.

Section 5 of the Voting Rights Act prohibits any covered state or political subdivision, such as Alabama, from enacting or seeking to administer any change in a voting "standard, practice, or procedure" without first obtaining preclearance. Congress intended section 5 to have a broad scope. *Allen v. State Board of Elections,* 393 U.S. 544, 567, 89 S.Ct. 817, 832, 22 L.Ed.2d 1 (1969). As a result, even subtle, minor or informal changes which may have a discriminatory effect on voting fall within the scope of section 5. *See id.* at 565, 89 S.Ct. at 831; *NAACP v. Hampton County Elec-*

*tion Commission,* 470 U.S. 166, ——, 105 S.Ct. 1128, 1135, 84 L.Ed.2d 124 (1985).

Introduction of absentee ballot numbering in Greene, Perry and Sumter counties was clearly a change in a voting practice or procedure. Defendants dispute this by suggesting that Ala. Code § 17–8–35, which sets forth a ballot numbering system for regular ballots, is also applicable to absentee ballots through the operation of Ala. Code § 17–10–6, as amended in 1980. They further suggest that section 17–10–6 was properly precleared. Assuming defendants' position to be correct, these sections do not authorize the particular practice of ballot numbering at issue here. Indeed, there has never been any pretense of compliance with section 17–8–35 with regard to absentee voting. That section preserves the secrecy of the ballot by requiring a seal to be placed over the ballot number, and in conjunction with section 17–8–34 establishes a procedure for preventing election officials from seeing how voters cast their ballots. The seal is to be removed only in the event of an election contest or grand jury investigation. The integrity of the ballot is further preserved by another section, 17–8–37, which makes failure to seal the number as required punishable by a fine of up to $100, and improper removal of or tampering with a seal a felony punishable by up to five years' imprisonment.

If these provisions had been applied to absentee ballots we might have a different case. As it was, however, the ballot numbering system actually employed failed to preserve ballot secrecy. No seal was placed over the numbers; the election officials could have determined the identity of the persons for whom the absentee voters cast their ballots. This was a marked change from the previous practice of absentee voting in the three counties and was not permitted by any precleared statute.

It is also clear that the abrogation of ballot secrecy could easily have a discriminatory effect on voting. The plaintiffs allege that the practice was intended to "throttl[e] the voting strength of the black

majority populations in Greene, Perry, [and] Sumter ... counties by intimidating and frightening persons who are dependent on casting absentee ballots ... to discourage said voters from exercising their franchise." Although this allegation is strongly contested by defendants and we do not reach it as a factual issue, it does suggest a plausible consequence of such a ballot numbering scheme.

Nevertheless, defendants contend that preclearance of the ballot numbering practice was not necessary. They first argue that the scheme was a mere "deviation" from official state policy, not the type of state-sanctioned practice which Congress intended to be subject to preclearance. They cite a number of circuit and district court cases in support of this proposition.

■ We need not determine to what extent these cases are similar to the case at hand, however, because we find this case to be controlled by the Supreme Court's more recent decision in *Hampton County.* In that case local officials altered the length of the period between the end of candidate qualification and the election. There, as here, the change was a short-term one affecting only a small portion of the state. There, as here, the local officials acted contrary to official statewide practice. Yet the Court in *Hampton County* held the change subject to preclearance, noting that section 5 reaches "informal" changes and even ones "unlikely to be repeated." 105 S.Ct. at 1135. We agree with plaintiffs that *Hampton County* requires us to reject defendants' "deviation" argument.[1]

Defendants also argue that preclearance was unnecessary because of the purpose for which the ballot numbering was carried out. They contend that the practice is outside the scope of section 5 because it was instituted as "a reaction to preceived widespread abuse of the absentee voting proce-

dure" and as "a remedial, emergency, response to the problem of vote-stealing."

■ We must reject this contention, for even the best motives are no substitute for preclearance. "[T]he question is not whether the [practice] is in fact innocuous and likely to be approved [upon preclearance], but whether it has a *potential* for discrimination." *Dougherty County Board of Education v. White,* 439 U.S. 32, 42, 99 S.Ct. 368, 374, 58 L.Ed.2d 269 (1978). "[N]either the absence of discriminatory purpose nor a good-faith implementation of a change remove the potential for discriminatory effects." *Hampton County,* 105 S.Ct. at 1137. As we noted above, the discriminatory potential of ballot numbering is quite clear. Even if there was originally an "emergency" need for the practice sufficient to justify adoption of the change without preclearance—a possibility we need not consider—there is certainly no emergency now. Defendants have now had ample time in which to obtain legislative authorization for numbering absentee ballots and to seek preclearance of such legislation. An "emergency" rationale thus cannot, at this point, suffice to permit defendants to continue the practice.

■ The irrelevancy of motive and actual effect to the section 5 inquiry requires us also to reject defendants' third contention, that preclearance was not needed because of the intraracial nature of the dispute. Defendants note that the ballot numbering was spurred by complaints from black voters and candidates about vote fraud by other blacks, and is being challenged by blacks. While these uncontested assertions lend some credence to defendants' claim of good motive, we note once more that potential for discrimination, not motive or actual effect, determines the need for preclearance.

---

1. We further note that the change in Perry County was made pursuant to a mandatory injunction by the circuit court—the state court of general jurisdiction—and that the change in Greene County was made pursuant to a request by the district attorney for the circuit. Without

deciding whether they had authority under state law to take these actions, we observe that those officials were officers of the state invested with certain powers to act on behalf of the state within their geographical boundaries.

## III.

In sum, we conclude that implementation of the ballot numbering practice at issue here was a change in a voting practice or procedure subject to section 5 preclearance. In so holding we do not imply that ballot numbering of some type cannot be an appropriate measure to combat election fraud. We hold only that under Voting Rights Act the Attorney General or the District of Columbia district court must first approve the practice.

Defendant's motion for summary judgment is DENIED. Plaintiffs' motion for summary judgment is GRANTED. It is ORDERED that judgment be entered enjoining defendants from marking absentee ballots or ballot envelopes in such a manner as to permit officials to determine what voter cast a particular ballot, until such time as this practice has been precleared under the Voting Rights Act.

As other issues have been resolved by orders not requiring a three-judge panel, this order represents the final judgment in the case and costs are taxed against the defendants.