Thomas **HAWTHORNE** and Emory **Newman, etc., Plaintiffs,**

Andre **Keith, etc., Plaintiff–Intervenor,**

v.

Jack **HURLEY, etc., et al., Defendants.**

Civ. A. No. 89–T–381–S.

United States District Court,
M.D. Alabama, S.D.

Dec. 21, 1990.

Terry G. Davis, Terry G. Davis, P.C., Montgomery, Ala., James U. Blacksher, John C. Falkenberry, Leslie Proll, Edward Still, Leslie Proll, Birmingham, Ala., for plaintiffs.

Fred D. Gray, Tuskegee, Ala., Solomon Seay, Montgomery, Ala., for plaintiff-intervenor Keith.

Susan Russ, Montgomery, Ala., Fournier J. Gale, III, Gregory H. Hawley, Maynard, Cooper, Frierson & Gale, Birmingham, Ala., John H. England, Jr., England & Bivens, Tuscaloosa, Ala., James L. North, Birmingham, Ala., for Baker and State Democratic Committee.

Solomon Seay, Montgomery, Ala., for deponents Ala. Democratic Party.

Vincent H. Cohen, Anthony L. Sutin, John C. Keeney, Roger L. Patton, Jr., Washington, D.C., David Schoen, Montgomery, Ala., for Democratic Party of the U.S.

Christine A. Varney, General Counsel, Democratic Nat. Committee, Washington, D.C., for Democratic Nat. Committee.

Philip H. Smith, Talladega, Ala., for Talladega County Democratic Executive Committee.

Alston Keith, Jr., Selma, Ala., for Dallas County Democratic Executive Committee.

Clifford W. Cleveland, Prattville, Ala., for Autauga County Democratic Executive Committee.

Shelby Co. Democratic Executive Comm., Montevallo, Ala. pro se.

Winston Griggs, Henry Co. Dem. Executive Comm., Headline, Ala., pro se.

Raymond Bailey, Chair, Baileyton, Ala., for Cullman CDEC.

James Harris, Chair, Wedowee, Ala., for Randolph CDEC.

Dorman Walker, Montgomery, Ala., for CDECs: Geneva, Madison, St. Clair, Tuscaloosa, Pickens, Chambers, Bibb, Montgomery, Marion, Coffee, Lawrence, Marengo, Hale.

Gary White, Double Springs, Ala., for Winston CDEC.

J. Milton Coxwell, Jr., Monroeville, Ala., for Monroe CDEC.

Robert M. Seale, Livingston, Ala., for Sumter CDEC.

Wallace H. Lindsey, III, Butler, Ala., for Choctaw CDEC.

William T. Musgrove, Jr., Florence, Ala., for Lauderdale CDEC.

Lee B. Williams, Grove Hill, Ala., for Clarke CDEC.

Joe Macon, Wetumpka, Ala., for Elmore CDEC.

James M. Prestwood, Andalusia, Ala., for Covington CDEC.

## ORDER

Before JOHNSON, Circuit Judge, HOBBS, Chief District Judge, and THOMPSON, District Judge.

MYRON H. THOMPSON, District Judge:

In this action, plaintiffs Thomas Hawthorne, Emory Newman, and Andre Keith, on behalf of themselves and other African–American Democrats in Alabama, claimed that a change in the method used by defendant State Democratic Executive Committee to supplement its elected black membership had to be precleared under § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973c. The court agreed that § 5 required the state committee's new plan to be submitted for preclearance.[1] The Attorney General of the United States subsequently approved the proposed change. The cause is now before the court on the committee's motion to be allowed to

---

1. *Hawthorne v. Baker,* 750 F.Supp. 1090 (M.D. Ala.1990).

implement the new plan for choosing additional members at a special meeting of its elected black membership. Plaintiffs oppose this motion, arguing that the designation by the committee of a new date for filling appointed seats would itself constitute a change in voting that must be pre-cleared under § 5. For the reasons set forth below, the court concludes that the committee's motion is due to be granted.

## I.

In January 1990, the state committee adopted a new plan for selecting its members.[2] Under the previous system, the Alabama Democratic Conference ("ADC"), a state-wide, predominantly black political organization, was authorized to appoint 23 members to serve four-year terms on the committee alongside those members elected in the Democratic gubernatorial primary. The committee proposed to switch to a formula under which additional black members were to be chosen only to the extent necessary to insure that the proportion of black persons on the committee would be at least equal to the proportion of blacks in the general population *or* the proportion of blacks voting in the gubernatorial primary, whichever was greatest.[3] According to this new formula, 15 addition-

al black members were to be appointed at the committee's 1990 organizational meeting.[4] The new plan also abolished the right of the ADC to appoint members, and instead authorized those blacks elected to the committee to fill the additional seats.[5]

In March 1990, plaintiffs—who had already challenged the old system for selecting members of the state committee under § 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973 [6]—filed additional claims alleging that the committee and its chairperson, John Baker, were proceeding to implement the new plan without having first secured preclearance under § 5.[7] The state committee had earlier submitted its new plan to the Attorney General but it had not yet been precleared, nor had this court ruled on plaintiffs' § 5 challenge, when the committee held its 1990 organizational meeting on August 2, 1990. Plaintiffs and the committee now disagree as to what occurred when a caucus of the elected black members was convened at this meeting. However, neither side contends that the entire elected black membership of the committee voted to select a group of 15 additional members; thus, strictly speaking, the new plan was not actually implemented.[8]

2. For a more extensive discussion of the background to this lawsuit, *see Hawthorne v. Baker,* 750 F.Supp. 1090, 1092–94 (M.D.Ala.1990).

3. The January 1990 plan, as originally enacted, also required additional members to be appointed only from among blacks who had run for committee seats and lost. However, after our initial order in this case, the committee withdrew this element of the proposal from consideration and the Attorney General approved the change absent the loser-eligibility provision. The state committee does not seek to implement this provision and it is therefore not an issue before the court.

4. This number was derived from an estimate that blacks constituted 32% of the electorate in the 1990 Democratic gubernatorial primary.

5. The new plan also provided for selection of the state committee's Vice–Chairperson for Minority Affairs by the elected black members, and guaranteed black members a proportionate share of seats on the committee's executive board.

6. The new plan was adopted several months after plaintiffs filed this lawsuit, claiming that

the Democratic Party at its local, state, and national levels had denied them and other African–American citizens of Alabama an opportunity equal to that of white citizens to be represented on party governing bodies, in violation of § 2 and the fourteenth and fifteenth amendments to the United States Constitution. The motion now before the court involves only the State Democratic Executive Committee.

7. Jack Hurley, the state committee's new chairperson as of August 1990, has since been substituted for Baker as a defendant in this lawsuit.

8. Plaintiffs suggest that proceedings at the beginning of the caucus were consistent with the terms of the new plan, but acknowledge that, at that time, 23 rather than 15 members were selected, and do not dispute that the 23 proposed appointees were permitted to participate in the vote on whether they themselves should be seated. Defendants, in turn, suggest that the new plan was, in effect, put into place later in the meeting, but do not deny that only a fraction of the elected black members were present when 15 additional appointments were voted on. ADC-affiliated members had left the meet-

On August 20, 1990, this court found that the new plan constituted a change in voting that had a potential to discriminate against minority voters, and concluded that the change had to be precleared under § 5.[9] In October 1990, the Attorney General notified the state committee that he did not interpose any objections to the new plan, "with respect to the [committee's] 1990–1994 term."[10] Soon after, the committee filed a "motion for clarification" with the court, in which it requested permission to convene a special meeting of its black caucus in order to select additional members pursuant to the terms of the new plan for the remainder of the 1990–94 term. The committee contends that § 5 does not cover post-hoc implementation of a change in voting that has been precleared after the effective date specified in the submission. Plaintiffs, on the other hand, argue that the proposal that the committee submitted and the Attorney General precleared called for additional members to be chosen at the organizational meeting in 1990; according to plaintiffs, because this meeting has already occurred, any special meeting held on a new date would constitute a change in voting and, therefore, require preclearance under § 5.

## II.

Under § 5, the only issue before a three-judge court is whether a change "is covered by § 5, but has not been subjected to the required federal scrutiny." *Allen v. State Board of Elections*, 393 U.S. 544, 561, 89 S.Ct. 817, 829, 22 L.Ed.2d 1 (1969). *Accord McCain v. Lybrand*, 465 U.S. 236, 250 n. 17, 104 S.Ct. 1037, 1046 n. 17, 79 L.Ed.2d 271 (1984).[11] Section 5 requires preclearance of any change in a "standard, practice, or procedure with respect to voting," 42 U.S.C.A. § 1973c, which has the "potential for discrimination" against African–Americans. *N.A.A.C.P. v. Hampton County Election Comm'n*, 470 U.S. 166, 181, 105 S.Ct. 1128, 1137, 84 L.Ed.2d 124 (1985). As we emphasized in our previous § 5 decision in this lawsuit, Congress intended the Voting Rights Act to reach any enactment which altered election procedures "in even a minor way," *Allen*, 393 U.S. at 566, 89 S.Ct. at 832, and for the phrase, "standard, practice, or procedure" to be given the "broadest possible scope." *Id.* at 567, 89 S.Ct. at 832. *See also Dougherty County v. White*, 439 U.S. 32, 37–38, 99 S.Ct. 368, 372, 58 L.Ed.2d 269 (1978). Supreme Court cases in this area also teach that it is not the task of a three-judge court "to determine whether the changes at issue ... in fact resulted in impairment of the right to vote, or whether they were intended to have that effect," *Hampton County Election Comm'n*, 470 U.S. at 181, 105 S.Ct. at 1137, but that this "task is reserved by statute to the Attorney General or to the District Court for the

ing under the legitimate assumption that the old selection rule was still in effect and that the 23 persons chosen by the ADC had already been appointed. Clearly therefore, the selection processes in both portions of the meeting deviated significantly from that required under the new plan.

**9.** The court ruled that the change had a potential to discriminate with respect to voting for two reasons. First, we found that the requirement, since removed from the plan, that additional members be chosen from among only those blacks who had unsuccessfully sought election to the committee "could conceivably encourage blacks to run against other blacks or against whites who are the choices of blacks, and thus split and dilute the black vote." *Hawthorne v. Baker*, 750 F.Supp. 1090, 1095 (M.D. Ala.1990). Second, we also noted that the new formula for calculating the number of additional seats "could result in fewer blacks on the

state committee than under the existing plan." *Id.*

**10.** State committee's motion for clarification, Exhibit A.

**11.** The state committee suggests that the Attorney General's use of the phrase, "for the 1990–94 term," in his letter preclearing the new plan evinces his approval of a special meeting to implement the change. Because the court finds that the convening of a special meeting lacks a potential for discrimination, it need not resolve the issue of whether, by preclearing the plan after the committee's 1990 organizational meeting, the Attorney General, in effect, also precleared a special meeting. However, we note that the Supreme Court refused to find "implicit" preclearance of a new election date under similar circumstances in *N.A.A.C.P. v. Hampton County Election Comm'n*, 470 U.S. 166, 181–83, 105 S.Ct. 1128, 1137–38, 84 L.Ed.2d 124 (1985).

District of Columbia." *Id.* Our role is to determine whether . discrimination is a "plausible consequence" of the change. *Turner v. Webster,* 637 F.Supp. 1089, 1092 (N.D.Ala.1986) (three-judge court) (Vance, J.).

Nevertheless, however light may be the burden which plaintiffs must satisfy in order to demonstrate that a change in voting carries a "potential" to discriminate, it cannot be treated as so minimal as to write this requirement completely out of existence. Plaintiffs have failed to offer *any* scenario according to which the change in this case—selection of additional black committee members at a soon-to-be-held special meeting, rather than at the August organizational meeting—could potentially disadvantage black voters, elected black committee members, or blacks hoping to be chosen for additional seats. Plaintiffs do assert that a reduction in the number of additional appointments from 23, under the previous system, to 15, under the new plan's formula for 1990, is a "retrogressive" change.[12] However, such a comparison is misplaced because it ignores the fact that the Attorney General has already precleared the new plan along with its mechanism for calculating the number of additional seats reserved for blacks. Rather, the relevant change, whose potential to discriminate we must determine, is that from the plan as precleared to the plan as the committee now seeks to implement it. In other words, we must compare, as we have, the original provision for the committee's black caucus to select further members at the August 1990 organizational meeting, with the committee's current effort to convene a second, special meeting of the caucus to make such appointments according to the same procedures, but at a date later

than that previously designated and precleared. We find that this change has no potential for discrimination.

We are careful to acknowledge that changes in election dates or designations of dates for special elections may well be covered under § 5. *See Hampton County Election Comm'n,* 470 U.S. at 178–79, 105 S.Ct. at 1135–36; 28 C.F.R. § 51.17(b). However, such changes are subject to preclearance only if they have the "potential for discrimination." Thus in *Hampton County Election Comm'n,* the Supreme Court required preclearance of the scheduling of a March election where the Attorney General had approved a plan calling for a November election, because it found that this change, coupled with the retention of an August candidate filing deadline, could possibly hinder voter participation and discourage potential candidates.[13] *Id.* at 177–78, 105 S.Ct. at 1135. *See also Garcia v. Guerra,* 744 F.2d 1159, 1165 (5th Cir.1984) (change from April to August election date had potential to harm Hispanic voters, many of whom were migrant workers who left state from late April until September each year), *cert. denied,* 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 497 (1985). In contrast, there is no indication whatsoever that the "voters" in this case (elected black committee members and those black Democrats they represent) or the "candidates" (blacks who desire to be appointed to the committee) will in any way be disadvantaged if such additional selections are made at a special meeting held on a new date, as opposed to if they had been made at the August 1990 organizational meeting.[14]

### III.

We therefore conclude that the convening of a special meeting of the state com-

---

**12.** Plaintiffs' opposition to state committee's motion for clarification, at 2.

**13.** The Court found that "an election in March is likely to draw significantly fewer voters than an election held simultaneously with a general election in November." *Id.* at 178, 105 S.Ct. at 1135. The Court also noted that by "extend[ing] the gap between the filing period and the election," the change in the election date also could "possibly prevent[ ] relative latecomers from entering the race." *Id.*

**14.** In contrast to the circumstances in *Hampton County Election Comm'n,* there is no filing requirement for blacks who wish to be selected as additional members of the committee. Moreover, the date change in this case does not appear to pose a risk of diminished voter participation because the relevant "voters" are elected black members of the committee whose willingness to attend a special meeting plaintiffs do not question.

mittee's black caucus to select additional members does not constitute a change in voting that has the potential for discrimination, despite the fact that the committee's new selection plan was precleared for implementation at an organizational meeting which has already occurred.

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court, that the motion for clarification filed by the defendant State Democratic Executive Committee on October 12, 1990, be and it is hereby granted, to the extent that the state committee may now implement the new plan for selecting additional black members that was precleared by the Attorney General on October 5, 1990.