**Susan BOXX, Mary Louise White, and Allan Springer, for themselves and all others similarly situated, Plaintiffs,**

v.

**James BENNETT, in his official capacity as Secretary of State of Alabama,[1] Defendant.**

**Civil Action No. 98–A–1280–N.**

United States District Court,
M.D. Alabama,
Northern Division.

May 18, 1999.

---

1. The Alabama Electronic Voting Committee and George R. Reynolds, Polly Conradi, and Donald Keith, in their official capacities as members of the Jefferson County Canvassing Authority, were previously included as Defendants for the purpose of a Temporary Restraining Order. Their presence is no longer necessary for full relief, and they are hereby Dismissed as Defendants.

James U. Blacksher, Birmingham, J. Gerald Hebert, Alexandria, VA, Larry T. Menefee, Montgomery, for plaintiffs.

John J. Park, Jr., Office of the Attorney General Alabama State House, Montgomery, for James Bennett, Alabama Electronic Voting Committee, George R. Reynolds, Polly Conradi, Donald Keith, defendants.

Elizabeth Johnson, Donna M. Murphy, Bret R. Williams, U.S. Department of Justice, Civil Rights Division, Washington, DC, Bill Lann Lee, U.S. Department of Justice, Civil Rights Division, Housing & Civil Enforcement Section, Washington, DC, for United States, amicus.

Before EDWARD C. CARNES, Circuit Judge, W. HAROLD ALBRITTON, Chief District Judge, and MYRON H. THOMPSON, District Judge.

## MEMORANDUM OPINION

ALBRITTON, Chief District Judge.

## I. INTRODUCTION

This three-judge court has been convened to hear a case implicating the preclearance mandate of section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §§ 1973c. The Plaintiffs in this action are registered voters in Jefferson County. They contend that § 307–X–1–.21 of the amended Procedures for Electronic Vote Counting Systems, which allows for a recounting of votes under certain circumstances, cannot be implemented because Alabama failed to obtain proper preclearance under § 5 of the Voting Rights Act, 42 U.S.C. § 1973c.[2]

On December 1, 1998, United States District Judge W. Harold Albritton, acting pursuant to the authority granted by 28 U.S.C. § 2284(b)(3), issued a Temporary Restraining Order which enjoined the Defendant and other state and local officials from enforcing or implementing § 307–X–1–.21 of the amended Procedures for Electronic Vote Counting Systems until the Plaintiffs' Application for Preliminary Injunction had been heard. On December 10, 1998, the three-judge court convened to conduct a hearing on the Plaintiffs' motion for preliminary injunction. The court issued a preliminary injunction on December 14, 1998, enjoining the Defendant and other officials from implementing the recount provision, pending a hearing and final determination on the merits.

On May 4, 1999, the three-judge court convened to conduct a hearing for final determination on the merits. For the reasons set forth below, we conclude that the State of Alabama should have obtained preclearance for the recount provision at issue, but failed to do so. Therefore, the recount provision cannot be implemented until precleared by the Attorney General or the United States District Court for the District of Columbia, as provided in 42 U.S.C. § 1973c.

**2.** Section 307–X–1–.21, entitled "Recount," provides in full:

(a) Any person with standing to contest the election (as defined in Sections 17–5–1, 17–15–20, and 17–16–21) may petition the canvassing authority for a recount of any or all precinct returns. The time period for requesting a recount begins with the production of the certificate of result and ends forty-eight (48) hours after the official canvas of county returns. This canvassing authority is the canvassing board in general elections and the county executive committee in a party primary. The petitioner must be prepared to pay the cost of the recount and should be required to give security to cover these costs. The canvassing authority is to set the amount of the security based upon an estimate of actual costs. There being a public interest in fair and accurate elections, these costs shall be kept to a minimum by using county personnel or volunteer workers whenever possible. However, the recount must be conducted under the supervision of a trained and certified poll official. Representatives of opposing interests shall be given at least twenty-four (24) hours notice and shall be invited to participate in the recount.

(b) The recount should be conducted as simply as the type of equipment and local conditions permit provided that the following minimum safeguards are observed. The box or envelope holding the ballots shall be delivered unopened to the inspector in charge of the recount. A representative of the authority having custody of the ballots shall be present during the recount. The electronic ballot counter shall be retested before the recount. The recount shall consist of reading the ballots through the counter. Any ballot that was counted in the original election but is rejected by the counter in the recount shall be counted by hand. Representatives of opposing interests have the right to participate in the hand count, and any unresolved disputes over the interpretation of the voter's intent may be appealed to the canvassing authority.

(c) When the recount has been completed, the ballots shall be returned to their container along with a printout of the recount results. The ballot container shall be sealed and signed by the inspector conducting the recount and by the representative of the authority having custody of the ballots.

(d) If the recount produces a change in precinct totals of sufficient magnitude to alter the result of the election, the outcome shall constitute grounds for an election contest as now prescribed by law. If the recount of the resulting contest alters the result of the election, the cost of the recount shall be borne by the county.

## II. *FACTUAL BACKGROUND*

In 1983, the Alabama Legislature passed Act 83–200, authorizing the use of electronic voting equipment. *See* Ala.Code §§ 17–24–1 *et seq.* The Legislature created the Alabama Electronic Voting Committee and assigned to it the "duty ... to prescribe other procedures where necessary to achieve and maintain the maximum degree of correctness and impartiality of voting, counting, tabulating, and recording votes, by electronic vote counting systems provided by this chapter." *Id.* §§ 17–24–4, 7(b). The legislation made no express provision for a recount.

By letter dated March 8, 1983, Alabama submitted Act 83–200 to the Department of Justice for preclearance. The cover letter submitted with the legislation stated, "Voting will be changed by the use of a greater variety of voting tabulating equipment." March 8, 1983 letter from Lynda F. Knight to Assistant Attorney General, Joint Evidentiary Record Exhibit A. By letter dated May 13, 1983, the Department of Justice precleared "the change in question." May 13, 1983 letter from Wm. Bradford Reynolds to Lynda F. Knight, Joint Evidentiary Record Exhibit A.

Subsequently, the Alabama Electronic Voting Committee developed Proposed Procedures for Electronic Vote Counting. Section 3.19 of those Proposed Procedures, entitled "Recount," authorized canvassing authorities to conduct a recount whenever a qualified elector files a petition within forty-eight hours after the election results have been certified. The section also provided that the recount would constitute grounds for an election contest if it produces a change large enough to alter the result of the election.

Before the Electronic Voting Committee promulgated section 3.19, no other rule or statute authorized a recount prior to the filing of an election contest. The grounds for an election contest were limited by statute to the following:

(1) Malconduct, fraud or corruption on the part of any inspector, clerk, marker, returning officer, board of supervisors or other person.

(2) When the person whose election to office is contested was not eligible thereto at the time of such election.

(3) On account of illegal votes.

(4) On account of the rejection of legal votes.

(5) Offers to bribe, bribery, intimidation or other malconduct calculated to prevent a fair, free and full exercise of the elective franchise.

Ala.Code § 17–15–1.

By letter dated June 29, 1984, Alabama submitted the procedures for use in electronic voting to the United States Attorney General for preclearance. The cover letter submitted with the procedures states in pertinent part:

As required by Section 5 of the Voting Rights Act of 1965, I am enclosing for the approval of the Justice Department a copy of the Procedures for Use of Electronic Voting Equipment in Alabama elections as required by Act No. 83–200 of the 1983 Regular Session of the Alabama Legislature. The procedures were drafted by the Alabama Electronic Voting Committee in keeping with Act No. 83–200, a copy of which is attached. This Act was approved for preclearance by your agency on May 13, 1983. (File No. G 9787)

In compliance with Section 51:25 of the Procedures for Submission under Section 5 of the Voting Rights Act, the following information is submitted:

a. Copies of the Procedures are enclosed.

b. Voting will be changed in that in those counties which choose to do so, electronic voting equipment will be installed and used in elections. Such equipment will record and tabulate ballots electronically.

. . .

k. Change will affect the method and procedures of casting, recording, and tabulating ballots.

June 29, 1984 Letter from Lynda K. Oswald to Assistant Attorney General, Joint Evidentiary Record Exhibit B.

There is no mention of the recount provision in the submission letter, nor are there any references to the provision in any of the supporting documents, other than in the text of the procedures themselves. The text of the recount provision appears on pages 20 to 22 of a 24-page document. On September 4, 1984, the Department of Justice issued a letter which precleared the "change in question." Sept. 4, 1984 Letter from Wm. Bradford Reynolds to Lynda K. Oswald, Joint Evidentiary Record Exhibit B.

In 1998, the Electronic Voting Committee amended and repromulgated the Procedures for Electronic Vote Counting Systems to comply with the Alabama Administrative Procedure Act. Section 3.19 was reformatted and renumbered to section 307–X–1–.21, but the Committee made no substantive change to the recount provision. Alabama submitted the procedures to the Attorney General for preclearance for a second time. The cover letter submitted with the amended procedures refers the Attorney General to exhibit D of the State's submission for "an explanation and designation of the changes in the procedures." March 9, 1998 Letter from Lynda K. Oswald to Civil Rights Division, Joint Evidentiary Record Exhibit C. Exhibit D is a two-page memorandum which lists fifteen changes to the procedures. It makes no reference to the recount provision in section 307–X–1–.21. *See* Joint Evidentiary Record, Exhibit C. The recount provision appears in each version of the complete text of the procedures which the state submitted to the Attorney General. The

recount provision also appears in one of twenty-one Certifications of Administrative Rules, submitted to the Attorney General, which were issued by the Secretary of State as part of the rule-making process when the procedures were repromulgated.

By letter on May 11, 1998, the Attorney General precleared the "specified changes." May 11, 1998 Letter from Elizabeth Johnson to Lynda K. Oswald, Joint Evidentiary Record Exhibit C. The Plaintiffs assert that the state never obtained preclearance of the recount provision because it failed to submit an unambiguous description of the change in Alabama election law accomplished by the recount provision. They seek a permanent injunction preventing the state from implementing the recount provision prior to obtaining proper preclearance under section 5 of the Voting Rights Act.

### III. *DISCUSSION*

 Under section 5 of the Voting Rights Act of 1965, the State of Alabama must submit for the approval of the federal government "any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force and effect on November 1, 1964." 42 U.S.C. § 1973c. The State may preclear a voting change in one of two ways: it may obtain a declaratory judgment in the United States District Court for the District of Columbia, or it may submit the change to the Attorney General of the United States for approval. *See id.* If the Attorney General approves the change, or fails to register an objection to the change within 60 days, the change is precleared.[3] *See id.* "No new voting practice is enforceable unless the covered jurisdiction has succeeded in obtaining preclearance." *Lopez v. Monterey Coun-*

---

**3.** The Attorney General may extend the 60-day period. *See* 28 C.F.R. § 51.37(c). The State contends that the Attorney General affirmatively approved the recount provision by letters dated September 4, 1984 and May 11, 1998, not by the failure to respond earlier, so no issue of timing is presented in this case.

*ty,* 519 U.S. 9, 20, 117 S.Ct. 340, 347, 136 L.Ed.2d 273 (1996).

■ Both the Attorney General and private litigants may ensure a State's compliance with the preclearance provisions of the Voting Rights Act by bringing an enforcement action before a three-judge district court panel. See 42 U.S.C. §§ 1973c, j(d); *Allen v. State Bd. of Elections,* 393 U.S. 544, 555–58, 89 S.Ct. 817, 826–27, 22 L.Ed.2d 1 (1969). Because Congress has reserved for consideration by the Attorney General or the District Court for the District of Columbia the duty to determine whether a change covered by the Voting Rights Act has the purpose or effect of "denying or abridging the right to vote on account of race or color," *see* 42 U.S.C. § 1973c, the role of the three-judge court is limited. *See Allen,* 393 U.S. at 555–56, 89 S.Ct. at 826; *Perkins v. Matthews,* 400 U.S. 379, 383–85, 91 S.Ct. 431, 434–35, 27 L.Ed.2d 476 (1971). The three-judge court does not inquire into the discriminatory purpose or effect of a change. It asks only "(i) whether a change was covered by § 5, (ii) if the change was covered, whether § 5's approval requirements were satisfied, and (iii) if the requirements were not satisfied, what remedy [is] appropriate." *City of Lockhart v. United States,* 460 U.S. 125, 129 n. 3, 103 S.Ct. 998, 1001 n. 3, 74 L.Ed.2d 863 (1983).

## A. Was the Change Covered by Section 5?

Section 5 applies to "any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964...." 42 U.S.C. § 1973c. Regarding the scope of section 5, the Supreme Court has stated, "The legislative history on the whole supports the view that Congress intended to reach any state enactment which altered the election law of a covered State in even a minor way." *Allen,* 393 U.S. at 566, 89 S.Ct. at 832 (1969). The Court further noted Congress' intention "to give the Act

the broadest possible scope ...." *Id.* at 567, 89 S.Ct. at 832.

■ A Department of Justice regulation listing some examples of changes affecting voting includes "[a]ny change concerning registration, balloting, and the counting of votes ...." 28 C.F.R. § 51.13(b). Given the Court's directive that section 5 extends to the broadest possible scope, a provision allowing a pre-election contest recount where none had existed before clearly constitutes a change with respect to voting within the purview of section 5.

The Defendant contends that, even if the court determines that the recount provision constituted a change with respect to voting, the three-judge court must further ask whether discrimination was a "plausible consequence" of the voting change to determine if section 5 applies. In *Greene County Racing Comm'n v. City of Birmingham,* 772 F.Supp. 1207, 1212 (N.D.Ala.1991)(three-judge court), *judgment vacated,* 505 U.S. 1201, 112 S.Ct. 2986, 120 L.Ed.2d 864 (1992), the court noted that whether a specific change is subject to the preclearance requirement "turns on whether such change has the 'potential for discrimination' against black persons." The plaintiffs asserted that section 5 applied to numerous decisions by which the Birmingham City Council and Jefferson County Commission set a referendum on greyhound racing. The court held that the preclearance mandate in section 5 did not apply because "the plaintiffs have failed to offer any credible evidence that any one of the challenged practices, qualifications or prerequisites to voting has any potential for discrimination on the basis of race or color." *Id.* at 1215.

In *Hawthorne v. Hurley,* 756 F.Supp. 527, 531 (M.D.Ala.1990)(three-judge court), *judgment vacated,* 499 U.S. 933, 111 S.Ct. 1408, 113 L.Ed.2d 440 (1991), the court held that a decision by the State Democratic Executive Committee to select additional black members more promptly by calling a special meeting instead of elect-

ing them at the regular organizational meeting had no potential to discriminate and fell outside of section 5. The court stated, "[H]owever light may be the burden which plaintiffs must satisfy in order to demonstrate that a change in voting carries a 'potential' to discriminate, it cannot be treated as so minimal as to write this requirement completely out of existence." *Id.*

The phrase "potential for discrimination" first appeared in *Perkins v. Matthews,* 400 U.S. 379, 388–89, 91 S.Ct. 431, 437, 27 L.Ed.2d 476 (1971), where the Court noted that section 5 "was designed to cover changes having a potential for racial discrimination in voting . . . ." In a concurring opinion criticizing the expansive scope of section 5, Justice Harlan commented:

> Section 5 requires submission of changes 'with respect to voting' only. The Court seems to interpret this restriction as including any change in state law which has an effect on voting, if changes of that type have a 'potential for discrimination in voting.' The limitation implied by the latter clause will prove meaningless as a practical matter. Given a change with an effect on voting, a set of circumstances may be conceived with respect to almost any situation in which the change will bear more heavily on one race than on another. In effect, therefore, the Court requires 'submission of any change which has an effect on voting.'

*Id.* at 398, 91 S.Ct. at 442 (Harlan, J., concurring).

Though the Supreme Court has referred to changes with a "potential for discrimination" in subsequent cases,[4] it has failed to invest the phrase with any meaningful content as an obstacle to section 5 coverage. Where the Court has mentioned the applicability of section 5 to changes which have the "potential for discrimination," it has done so to emphasize that the three-judge court must observe its proper limitations. *See, e.g., NAACP v. Hampton County Election Comm'n,* 470 U.S. at 180, 105 S.Ct. at 1137 ("[I]t is not our province, nor that of the District Court below, to determine whether the changes at issue in this case in fact resulted in impairment of the right to vote, or whether they were intended to have that effect. . . . Our inquiry is limited to whether the challenged alteration has the potential for discrimination."). In *Lopez v. Monterey County,* 519 U.S. 9, 117 S.Ct. 340, 136 L.Ed.2d 273 (1996), the Court omitted any discussion of a voting change's potential for discrimination. The Court affirmatively stated, "On a complaint alleging failure to preclear election changes under § 5, [the three-judge] court lacks authority to consider the discriminatory purpose or nature of the changes." *Id.* at 23, 117 S.Ct. at 348–49.

In a recent case, the Court applied section 5 to Mississippi's procedures for implementation of the National Voter Registration Act of 1993 (the motor-voter legislation). *See Young v. Fordice,* 520 U.S. 273, 117 S.Ct. 1228, 137 L.Ed.2d 448 (1997). The Court noted, "Insofar as they embody discretionary decisions that have a potential for discriminatory impact, [the procedures] are appropriate matters for review under section five's preclearance process." *Id.* at 285, 117 S.Ct. at 1236. The Court stated forcefully, however, that it does not matter for the preclearance requirement "whether the change works in favor of, works against, or is neutral in its impact upon the ability of minorities to vote. It is change that invokes the preclearance process; evaluation of that change concerns the merits of whether the change should

---

4. *See Morse v. Republican Party of Virginia,* 517 U.S. 186, 217, 116 S.Ct. 1186, 1204, 134 L.Ed.2d 347 (1996); *Presley v. Etowah County Comm'n,* 502 U.S. 491, 505, 112 S.Ct. 820, 829, 117 L.Ed.2d 51 (1992); *NAACP v. Hampton County Election Comm'n,* 470 U.S. 166, 181, 105 S.Ct. 1128, 1137, 84 L.Ed.2d 124 (1985); *Dougherty County, Georgia, Bd. of Educ. v. White,* 439 U.S. 32, 42, 99 S.Ct. 368, 374, 58 L.Ed.2d 269 (1978).

in fact be precleared." *Id.* (citations omitted).

The Eleventh Circuit has stated that "it is questionable whether Supreme Court precedent unequivocally holds that a plaintiff must prove potential for discrimination to prevail on a section 5 claim." *Barnett v. Bailey,* 956 F.2d 1036, 1043 n. 9 (11th Cir.1992)(noting that the Supreme Court has maintained its adherence to an expansive interpretation of the scope of section 5 and given deference to regulations of the Justice Department which state unequivocally that any change affecting voting is subject to preclearance under section 5). At a minimum, the Supreme Court precedent appears to have fulfilled the second Justice Harlan's prophecy that a limitation implied by the phrase "potential for discrimination" "will prove meaningless as a practical matter." *Perkins,* 400 U.S. at 398, 91 S.Ct. at 442 (Harlan, J., concurring).

Nevertheless, this three-judge court need not determine the substantive impact of the phrase "potential for discrimination." The burden on the Plaintiffs to make such a showing, if any, is light. Here, the recount provision allows ballots to be unsealed and recounted without supervision of a court pursuant to an election contest. It further provides a new ground for an election contest. No matter how slight, arguably the potential exists for fraud and discrimination. In light of the Supreme Court's clear mandate that section 5 applies broadly, the court holds that the recount provision was a change with respect to voting within section 5, necessitating preclearance.

In so holding, this court makes no finding regarding the actual purpose or effect of the challenged regulation. Defendant contends that the recount provision clearly is not discriminatory. Section 5 precludes the three-judge court, however, from considering the Defendant's contention.

Whether the recount provision has the purpose or effect of "denying or abridging the right to vote on account of race or color," is a question left for resolution by the Attorney General or the United States District Court for the District of Columbia. *See* 42 U.S.C. § 1973c. This court merely determines whether section 5 applies, and section 5 applies broadly, without regard to the actual impact of a proposed change.

## B. Has the Recount Provision Been Precleared?

Because the court has determined that the recount provision was subject to the preclearance mandate in section 5, the court must now determine whether the requirements of section 5 have been satisfied with regard to the recount provision. The state did not request preclearance from the United States District Court for the District of Columbia. Therefore, the issue for this court is whether Alabama obtained preclearance for the recount provision from the Attorney General.

The Defendant asserts that the state obtained preclearance for the challenged regulation on two occasions–1984 and 1998. Regarding the 1998 submission, however, the Defendant concedes that the submission indicated that there was no change to the recount provision at issue in this case. Therefore, the 1998 submission could not independently satisfy the preclearance requirement for the recount provision. *See McCain v. Lybrand,* 465 U.S. 236, 256, 104 S.Ct. 1037, 1049, 79 L.Ed.2d 271 (1984)("When a jurisdiction adopts legislation that makes clearly defined changes in its election practices, sending that legislation to the Attorney General merely with a general request for preclearance pursuant to § 5 constitutes a submission of the changes made by the enactment and cannot be deemed a submission of changes made by previous legislation which themselves were independently subject to § 5 preclearance."). Accordingly, Alabama's

ability to implement the challenged recount provision depends on whether it effectively obtained preclearance for that provision with its 1984 submission.

When a state chooses to submit changes to the Attorney General for preclearance, section 5 requires that the state "in some unambiguous and recordable manner submit any legislation or regulation in question directly to the Attorney General with a request for his consideration pursuant to the Act." *Allen*, 393 U.S. at 571, 89 S.Ct. at 834–35. The State must "identify with specificity each change that it wishes the Attorney General to consider." *Clark v. Roemer*, 500 U.S. 646, 658, 111 S.Ct. 2096, 2104, 114 L.Ed.2d 691 (1991). There is a "presumption that 'any ambiguity in the scope of the preclearance request' must be construed against the submitting jurisdiction." *Id.* at 659, 111 S.Ct. at 2105 (quoting *McCain*, 465 U.S. at 257, 104 S.Ct. at 1050). This presumption recognizes the limited resources of the Justice Department and its inability to investigate independently all changes with respect to voting. *See McCain*, 465 U.S. at 247, 104 S.Ct. at 1045 (1984). It also recognizes that "a State may decide to leave some part of a statute affecting voting unenforced, whether due to an independent determination that the provision violates the Voting Rights Act, a conclusion that it conflicts with other state law, or for some other reason." *Ward v. Alabama*, 31 F.Supp.2d 968, 971 (M.D.Ala. 1998).

Based on the principles set forth above, this court looks only to the adequacy of the state's submission to determine whether the state obtained preclearance for a challenged provision. In this case, we find that the state did not obtain preclearance for the recount provision. More specifically, we find that the state did not identify the recount provision in an unambiguous and recordable manner.

The cover letter submitted with the Procedures for Electronic Vote Counting Systems included three statements addressing the proposed changes: (1) "Voting will be changed in that in those counties which choose to do so, electronic voting equipment will be installed and used in elections. Such equipment will record and tabulate ballots electronically"; (2) "Change will affect the method and procedures of casting, recording and tabulating ballots"; and (3) "Reason for change is a more modern and accurate system of counting votes and recording them." June 29, 1984 Letter from Lynda K. Oswald to Assistant Attorney General, Joint Evidentiary Record Exhibit B. The clear message of these statements is that the submitted changes merely effectuated a transition from older methods of voting to an electronic system. These statements would not put the Attorney General on notice that the submission included a provision creating a pre-election contest recount which could serve as a new basis for an election contest under Alabama law.

The Defendant vigorously contends that, because electronic voting had never been used prior to 1984, the entire 1984 submission consisted of "green grass," or new material without any benchmarks under the old law. Thus, according to the Defendant, the state necessarily made an omnibus submission and could not have referred to any prior law to be changed. This argument ignores the state law which existed at the time of the submission and which the recount provision either altered or superseded. Clearly, by providing that the results of a recount could constitute grounds for an election contest, the challenged regulation expanded upon Alabama Code § 17–15–1. The 1984 submission did not refer to this change in the law.

The Defendant has suggested that, if the recount provision failed to receive preclearance, the state did not obtain preclearance for the entire system of electron-

ic voting. Nothing in the court's opinion compels such a result. Our ruling is limited to the regulation challenged in this lawsuit. The recount provision did not merely effectuate a transition to electronic voting; it created a new ground for an election contest. The State's submission represented that the changes simply implemented electronic voting, and did not make clear the changes introduced in the recount provision.

## C. What is the Appropriate Remedy?

■ The proper remedy under section 5 is clear:

> No new voting practice is enforceable unless the covered jurisdiction has succeeded in obtaining preclearance. If a voting change subject to § 5 has not been precleared, § 5 plaintiffs are entitled to an injunction prohibiting implementation of the change.

*Lopez v. Monterey County,* 519 U.S. 9, 20, 117 S.Ct. 340, 347, 136 L.Ed.2d 273 (1996) (citations omitted). Plaintiffs have requested an injunction against implementation of the recount provision until and unless it has received section 5 preclearance. Defendant contends that, based on the Plaintiffs' theory, the three-judge court should dismiss the case without prejudice, allowing the state courts to decide the validity of the recount provision under state law.

Plaintiffs have asserted that immediate submission of the recount provision to the Attorney General would run afoul of the finality requirement. Department of Justice regulations state that the Attorney General will not consider on the merits

"any proposal for a change affecting voting submitted prior to final enactment or administrative decision." 28 C.F.R. § 51.22. The regulation further states, "[W]ith respect to a change for which approval by referendum, a State or Federal court or a Federal agency is required, the Attorney General may make a determination concerning the change prior to such approval if the change is not subject to alteration in the final approving action and if all other action necessary for approval has been taken." *Id.*

Plaintiffs contend that, because there are pending state court proceedings addressing the validity of the recount provision under Alabama law, the recount provision is subject to alteration or repeal by future state court action, and thus submission to the Attorney General for preclearance would be premature. Accordingly, the Defendant asserts that, if the three-judge court accepts the Plaintiffs' theory, the section 5 controversy is not ripe until the state courts have determined that the recount provision is valid under state law. Additionally, the Defendant complains that, if he chooses to appeal the three-judge court's ruling, the Plaintiffs will again raise the prematurity argument.

As noted above, the role of the three-judge court is limited to determining (1) whether a change was covered by § 5, (2) if the change was covered, whether § 5's approval requirements were satisfied, and (3) if the requirements were not satisfied, what remedy is appropriate. Whether the state courts determine that the recount provision is valid under state law has no bearing on this court's proceeding.[5] Injunctive relief is the proper remedy in this

---

5. In any event, this court does not agree that submission to the Attorney General would be premature. Unlike the situation in *Young v. Fordice,* 520 U.S. 273, 117 S.Ct. 1228, 137 L.Ed.2d 448 (1997), the recount provision did not require enabling legislation to become effective as Alabama law. The Alabama legislature provided the enabling legislation for administrative procedures developed by the Electronic Voting Committee before the Committee promulgated the recount provision. Thus, the recount provision would not be submitted "prior to final enactment or administrative decision." Furthermore, the mere fact that parties have challenged the recount provision in state court does not render it a

action. If the Defendant disagrees with this court's determination that the state did not obtain preclearance for the recount provision, he may appeal the decision. The right to appeal does not depend on what arguments the Plaintiffs may raise.

## IV. CONCLUSION

For the reasons stated above, the court concludes that the State of Alabama did not obtain preclearance of section 307–X–1–.21 of the amended Procedures for Electronic Vote Counting Systems, as required by section 5 of the Voting Rights Act of 1965. An appropriate judgment will be entered.

MYRON H. THOMPSON, District Judge, concurring.

I fully agree with and join in Judge Albritton's well-reasoned opinion. I write separately only to express my views on the "potential-for-discrimination" issue which has been the source of much confusion in this and other recent cases brought to enforce the preclearance mandate of § 5 of the Voting Rights Act of 1965, 42 U.S.C.A. § 1973c.

The issue, in short, is whether § 5 applies to only those voting changes having a potential for discrimination. The State of Alabama argues that the recount provision of the electronic vote-counting procedures is not covered by § 5—and thus need not be precleared—because discrimination is not a "plausible consequence" of the change at issue.[1] The plaintiffs respond that this court may not even consider whether the recount provision has the potential for discrimination because the court lacks authority to consider either its purpose or its effects.[2] For me, neither party has it quite right.

Several Supreme Court cases do indeed suggest that the potential for discrimination in voting is relevant in determining whether a change must be precleared under § 5. *See Morse v. Republican Party of Va.,* 517 U.S. 186, 217, 116 S.Ct. 1186, 1204, 134 L.Ed.2d 347 (1996) (Stevens, J., joined by Ginsburg, J.); *Presley v. Etowah County Comm'n,* 502 U.S. 491, 505, 112 S.Ct. 820, 829–30, 117 L.Ed.2d 51 (1992); *NAACP v. Hampton County Election Comm'n,* 470 U.S. 166, 181, 105 S.Ct. 1128, 1137, 84 L.Ed.2d 124 (1985); *Dougherty County, Georgia Bd. of Educ. v. White,* 439 U.S. 32, 42, 99 S.Ct. 368, 374, 58 L.Ed.2d 269 (1978); *Perkins v. Matthews,* 400 U.S. 379, 387–389, 91 S.Ct. 431, 435–436, 27 L.Ed.2d 476 (1971). Two more recent cases, however, suggest otherwise. Writing in 1996 for a unanimous court in *Lopez v. Monterey County,* for instance, Justice O'Connor declared that a three-judge court "lacks authority to consider the discriminatory purpose or nature of the changes." 519 U.S. 9, 23, 117 S.Ct. 340, 348–49, 136 L.Ed.2d 273 (1996). Even more recently, another unanimous Court wrote this:

> "Nor does it matter for the preclearance requirement whether the change works

---

change "for which approval by referendum, a State or Federal court or a Federal agency is required." Therefore, the state court proceedings do not preclude the state from requesting preclearance. The state may choose to submit the recount provision to the Attorney General tomorrow, wait until the state courts have determined the validity under state law of the recount provision, or discard the recount provision altogether. Regardless, the judgment in this action is limited to enjoining state officials from implementing the recount provision until the state obtains proper preclearance.

1. Response of James Bennett to plaintiffs' post-discovery brief regarding final disposition of this action, filed April 20, 1999, at 8 (quoting *Greene County Racing Comm'n v. City of Birmingham,* 772 F.Supp. 1207, 1213 (N.D.Ala.1991) (three-judge court), *vacated as moot sub nom. Harris v. City of Birmingham,* 505 U.S. 1201, 112 S.Ct. 2986, 120 L.Ed.2d 864 (1992)).

2. Plaintiffs' post-discovery reply brief, filed April 28, 1999, at 2.

in favor of, works against, or is neutral in its impact upon the ability of minorities to vote. *See generally City of Lockhart v. United States,* [460 U.S. 125, 103 S.Ct. 998 (1983)] (requiring preclearance of a change but finding the change nonretrogressive). It is change that invokes the preclearance *process;* evaluation of that change concerns the *merits* of whether the change should in fact be precleared. *See Lopez, supra,* at [519 U.S. at 23], 117 S.Ct., at 348–349; *Allen* [*v. State Board of Elections,* 393 U.S. 544, 555 n. 19, 89 S.Ct. 817, 826 n. 19, 827–28, 22 L.Ed.2d 1 (1969) ]."

*Young v. Fordice,* 520 U.S. 273, 285, 117 S.Ct. 1228, 1236, 137 L.Ed.2d 448 (1997).

At first blush, *Young* and *Lopez* appear to contradict the earlier cases. After all, how can a court determine whether something has a potential for discrimination without considering its nature, purpose, or effects? But here, as is often the case, context is everything.

The potential-for-discrimination issue dates back to a time when the scope of § 5 was still largely undecided. It first appeared in *Perkins v. Matthews,* 400 U.S. at 387–89, 91 S.Ct. at 435–36, when the Supreme Court was asked to determine whether a change in city boundary lines was a change "with respect to voting." 42 U.S.C.A. § 1973c. At the time, it was unclear whether an annexation had to be precleared. Such a change did not implicate voting on its face, nor did it directly effect a change in "election law." The Supreme Court nonetheless concluded that the annexation was covered by § 5 because it would have an *effect on voting* by determining who could and could not vote in municipal elections. The Court further observed that § 5 "was designed to cover changes having a potential for racial discrimination in voting, and such potential inheres in a change in the composition of the electorate affected by an annexation."

*Id.* at 388–89, 91 S.Ct. at 437 (citing *Gomillion v. Lightfoot,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960)).

Writing in dissent, Justice Harlan put the issue in relief, strongly questioning the Court's expressed expansion of § 5 to cover not only a change expressly affecting "election laws" but also "any change in state law which has an effect on voting, if changes of that type have 'a potential for racial discrimination in voting.' " 400 U.S. at 398, 91 S. Ct at 442 (Harlan, J., concurring in part and dissenting in part) (citation omitted). "The limitation implied by the [potential-for-discrimination] clause," Justice Harlan explained, "will prove meaningless as a practical matter" in restricting the circumstances covered by § 5 outside the context of election laws, *id.,* because, "[g]iven a change with an effect on voting, a set of circumstances may be conceived with respect to almost any situation in which the change will bear more heavily on one race than on another." *Id.*

The potential-for-discrimination issue thus arose not as an additional prerequisite to coverage under § 5 but rather as a way to identify changes which, though not clearly implicating voting on their face, are nonetheless changes "with respect to voting" subject to § 5. It would therefore be improper to conclude that a change's potential for discrimination is irrelevant to a three-judge court's inquiry under § 5; rather the degree to which it is relevant will depend upon the change at issue.

Later cases are consistent with this understanding. In *Dougherty County,* for example, the issue was whether § 5 covered a rule requiring county employees to take an unpaid leave of absence while campaigning for elective office. The county contended that its rule was merely an internal personnel practice not subject to § 5, but the Court disagreed. It found that the rule could have an effect on voter choice and, further, that the effect could be

discriminatory. Under such circumstances, the Supreme Court concluded that "obstacles to candidate qualification such as the Rule involved here are 'standard[s], practice[s], or procedure[s] with respect to voting.'" 439 U.S. at 43, 99 S.Ct. at 375.

In *Young* and *Lopez,* by contrast, the changes at issue obviously implicated voting. *Young,* for example, involved changes to voter registration laws. In *Lopez,* the plaintiffs challenged an ordinance which switched from districted to at-large elections for municipal judges. Both are obviously changes "with respect to voting" either on their face or in light of Supreme Court precedent, so no potential-for-discrimination inquiry was necessary.

The lesson to be learned from these cases is that a change that expressly affects election laws must be precleared regardless of its potential for discrimination in voting. But when a change does not so implicate voting, the court may look behind the face of the change to give it greater context, and one of the factors to which the court may look is whether the change has the potential for discrimination in voting. If a change has such potential, it constitutes a change "with respect to voting" and must be precleared.[3]

In this case, the recount provision made two important changes to Alabama *election law.* First, it created an individual right to a recount where none existed before. Prior to its adoption, no other rule or statute authorized a recount outside the context of an election contest, and, even within an election contest, the question of whether to order a recount was committed to the discretion of a judge. Second, the recount provision created a new ground for challenging the results of an election. Prior to its adoption, the grounds for an election contest were limited by statute to the following:

> "(1) Malconduct, fraud or corruption on the part of any inspector, clerk, marker, returning officer, board of supervisors or other person.
>
> "(2) When the person whose election to office is contested was not eligible thereto at the time of such election.
>
> "(3) On account of illegal votes.
>
> "(4) On account of the rejection of legal votes.
>
> "(5) Offers to bribe, bribery, intimidation or other malconduct calculated to prevent a fair, free and full exercise of the elective franchise."

1975 Ala.Code § 17–15–1. With its adoption, the State added the ground that, "[i]f the recount produces a change in precinct totals of sufficient magnitude to alter the result of an election, the outcome shall constitute grounds for an election contest as now prescribed by law." Ala. Admin. Code § 307–X–1–.21. In practical effect, then, the recount provision *amended* existing Alabama *election law.* See *Ex parte Jim Woodward,* —— So.2d ——, —— (Ala. 1998) (observing that the recount provision conflicts with and "displace[s]" existing law). Therefore, because the change expressly affects state election laws, it is reasonable to conclude that it is improper for this court to consider whether the recount provision has the potential for discrimination in voting.

Nevertheless, I join in the majority's opinion because the potential for discrimi-

---

**3.** This understanding of the potential-for-discrimination phrase is further reinforced by the fact that, in *Perkins v. Matthews,* the Supreme Court wrote that § 5 was designed to cover "changes having a potential for racial discrimination in voting," 400 U.S. at 388–89, 91 S.Ct. at 437, rather than "voting changes having a potential for racial discrimination."

While, as the Court has emphasized, it is "generally undesirable, where holdings of the Court are not at issue, to dissect the sentences of the United States Reports as though they were the United States Code," *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2751, 125 L.Ed.2d 407 (1993), the choice of phrasing is, I think, important here.

nation in the recount provision is so obvious and permits easy resolution of this case. We need look no farther than the findings rendered in state proceedings related to the election contest which was the catalyst for this litigation. *See Eubanks v. Hale*, Civil Action No. CV 98–7033 WJW (Jefferson County Cir. Ct. Jan. 4, 1999). Most importantly, the state judge in that case found that supporters of the losing contestant for sheriff of Jefferson County, Alabama, had specifically targeted black voters and precincts in a questionable investigation of fraud and malfeasance. *Id.* at 4–5. The discriminatory potential of an inquiry that sought to void only black votes was readily apparent; the state judge wrote:

> "From the frightening use of large-scale computer searches and criminal investigations targeted upon persons simply because they voted, simply because they live in Bessemer, and simply because they are of African–American origin, it appears this contest, in Jefferson County, Alabama, has caused democracy to come dangerously close to resting on a cracked foundation."

*Id.* The recount provision at issue here presents a similar danger, because it contains no safeguards to prevent its use in a similarly discriminatory fashion. It allows virtually any eligible voter to request a recount for any reason or for no reason at all, such that a voter could request a recount in predominantly black precincts whenever the results of an election do not suit the white majority. There can scarcely be a clearer demonstration of its potential for discrimination.