This expedited appeal involves an action for injunctive and declaratory relief against James R. Knight, as chairman of the State Democratic Executive Committee, by four candidates for the Alabama legislature, each of whom was declared ineligible to run in the Democratic Primary by a subcommittee of the State Democratic Executive Committee. The subcommittee held that each candidate (plaintiff) did not meet the party's one-year residency requirement, as it construes § 47, Ala. Const. 1901, or the party rule requiring that a candidate be a "qualified elector" in the district which he seeks to represent.
Each candidate's complaint alleged that the party subcommittee lacked jurisdiction to hear a challenge to their status until after the primary and that each had fulfilled the constitutional residency requirement.
The trial court held:
 "[T]he state Democratic Executive Committee [did not] have jurisdiction to determine in advance of a primary election the eligibility of a candidate in such primary for the office sought.
 "[A]nd following the 1982 reapportionment of the legislature under Act 82-629, *Page 248 
adopted on June 1, 1982, . . . a candidate for a legislative office [is not] required to live for one year prior to the November 2, 1982, general election in a Senate District or House District established under said act."
This appeal followed.
We hold that the Democratic Party has authority to hear pre-primary challenges to the political or legal qualifications of its candidates. Ala. Code 1975, §§ 17-16-12, -14. See, Hobbiev. Vance, 292 Ala. 367, 294 So.2d 743 (1974).
We reverse that portion of the decree which overturned the party's ruling rejecting, on residency grounds, the candidacy of each of the appellees. The facts are not materially disputed, and, because of the similarities as among the appellees, we will recite the facts pertaining only to appellee Gray.
Gray has resided in "old" House District 34 (in the same residence) for a number of years. Because of the redrawn house district lines by the reapportionment act of the legislature, Act 82-629, effective June 1, 1982, Gray's home is now located in an area that is in House District 32. Gray timely qualified as a candidate for the House of Representatives from the "new" House District 34, which embraces a portion of "old" 34, but does not include Gray's present residence. Gray alleged and testified at trial that he intended to move to a new home in House District 34 before the general election.
Section 47 of the 1901 Constitution provides, in pertinent part:
 "[Senators and representatives] shall have been citizens and residents of this State for three years and residents of their respective counties or districts for one year next before their election, if such county or district shall have been so long established; but if not, then of the county or district from which the same shall have been taken. . . ." (Emphasis supplied.)
Article VII, Section 1, paragraph (f)(1), of the Democratic Party rules reads, in pertinent part:
 "The following persons and none other shall be eligible to be candidates for nomination or election in said primary elections, namely: qualified electors who possess the qualifications fixed by law for the respective offices for which they are candidates for nomination or election. . . ."
The party, through brief of counsel, states:
 "The Democratic Party of Alabama has interpreted Section 47 as meaning that the residence of the candidate must have been for at least one year at one or more successive places within the physical confines of the district the candidate wishes to serve. This would have the practical value of assigning each potential candidate to one and only one district."
We hold that this is a permissible interpretation of § 47, insofar as candidates running in the party primary are concerned. "The State Executive Committee of a party has full right, power and authority to fix and prescribe the political and other qualifications of its own members and to determine who shall be entitled and qualified to vote in primary elections or be candidates or otherwise participate therein . . . just so such Committee action does not run afoul of some statutory or constitutional provision." Ray v. Garner, 257 Ala. 168, 57 So.2d 824 (1952). The construction of § 47 which the party makes is not an unreasonable one and is certainly not foreclosed by the language of that provision. Section 47 was placed in the Constitution at a time when county lines defined legislative districts. No house district was smaller than an entire county, and, although the more populous counties were represented by more than one member of the House of Representatives, all were elected countywide, and not from designated districts. Senate districts were composed of one or more counties. The term "district," as used in § 47 when originally incorporated into our Constitution, therefore, referred exclusively to senatorial districts. Members of the House of Representatives at that time represented *Page 249 
counties, not districts, as that term is now defined, thus, the constitutional reference to "counties or districts."
Therefore, § 47 did not address the present situation where legislative districts are drawn without reference to county lines or any other traditional geographical boundaries.
The plaintiffs argue that § 47 mandates that they be allowed to run in any district so long as a part thereof was taken from the district in which they have previously resided for one year. This would allow five districts in which Gray could run so long as he indicates an intention to move to that district before the general election. The party would limit that choice to one — the district in which he has resided for at least one year. The party points out that this interpretation has the practical value of assigning each potential party candidate to one and only one district. We agree and add that it also has the practical advantage of treating all potential party candidates for such district equally. To follow the plaintiff's argument would give candidate Gray a choice of five districts in which to run, whereas another candidate for the same position might be limited to one.
We hold that the Democratic Party is within its prerogative in interpreting § 47 as it does for purposes of its party primary. Whether the plaintiff's arguments would find more acceptance were we dealing with a candidate seeking certification as an independent in the general election we do not decide because that question is not before us.
We acknowledge that an opinion of the attorney general dated November 18, 1981, supports the plaintiff's arguments. The opinion sets out State Representative J.E. Turner's request for opinion:
 "I am presently the Representative from House District No. 96. I reside in Turnerville, Mobile County, Alabama. My present residence will be located in House District No. 97 under the new reapportionment plan which has been passed by the Legislature and sent to the Governor for his signature. My question to you is: If I choose to move my residence into House District 96, how long must I reside in that district to be able to run as Representative from that newly created district or, by what date must I move into that newly created district to meet any residency requirements? I would further point out for your consideration that should I move, the place of my new residence would have been included in old House District 96 from which the newly created House District 96 was taken. I point this out in light of Section 47, Constitution of Alabama 1901."
The letter opinion continues:
 "It is the opinion of this office that should you move your residence into that area encompassed by `new' district 96 prior to the general election on November 2, 1982, you will have sufficiently met Alabama's constitutional residency requirements. [Herein is set out the pertinent portion of § 47, Alabama Constitution.]
 "Under the reapportionment law, Act No. 81-1049, new district 96 will not come into existence until November 3, 1982.[1] Since the new district which you wish to represent will not have been established for a year, under the exception clause of Section 47, it is required that you have resided for at least one year in the district from which the new district has been taken. The new district has been taken in part from old district 96. You currently reside in and represent old district 96. If you move to that area currently in old district 96, but also encompassed by what will be new district 96, you then will have met the residency requirements for you will have always resided in that district from which the new district was taken and when the new *Page 250 
districts come into being you will be a resident of the district which you hope to represent.
 "In arriving at this conclusion, I am guided by the Alabama Supreme Court's view of the purpose of Section 47 of the Alabama Constitution which was set forth in Butler v. Amos [292 Ala. 260], 292 So.2d [645] at 646 [(1974)]:
 "`It is clear from this history that "the intent and object originally intended to be accomplished" was that a legislator must have lived at least one year in the same district with the people he sought to represent in the legislature so that they could know him and he could learn something of their needs."
 "The people who you seek to represent are principally those who you already represent and who have come to know you. Your change of residence in accordance with this opinion will be consistent with the object originally intended to be accomplished by Section 47 of the Constitution of Alabama, 1901."
Whether we would agree with this opinion in the context of an independent candidate's running in the general election is an issue we also pretermit. We simply hold that it does not foreclose the position taken by the Democratic Party here for purposes of its primary. Indeed, whether § 47 has any application after the reapportionment of the legislature to comport with federal requirements is itself subject to debate. This issue too we leave for another day.
The judgment appealed from is reversed, and the cause remanded for the entry of a judgment consistent herewith.
REVERSED AND REMANDED.
MADDOX and EMBRY, JJ., concur.
ALMON, J., concurs in the result.
TORBERT, C.J., with whom FAULKNER and BEATTY, JJ., join, concurs in the result, with opinion.
JONES, J., dissents, with opinion.
[1] The language "new district 96 will not come into existence until November 3, 1982," is technically incorrect; and while this inaccurate premise would materially affect Representative Turner's situation under Act No. 81-1049 (the establishment date of House District 96 being October 26, 1981), it is conceded by all parties in the instant case that House District 34 was established less than one year from the date of the general election.