## FOREMAN ET AL. *v.* DALLAS COUNTY, TEXAS, ET AL.

No. 96–987.   Decided June 27, 1997*

—————

*Together with No. 96–1389, *Foreman et al.* v. *Dallas County, Texas, et al.*, also on appeal from the same court.

PER CURIAM.

Texas by statute authorizes counties to appoint election judges, one for each precinct, who supervise voting at the polls on election days. In 1983 and several times thereafter, Dallas County changed its procedures for selecting these officials. Each of the new methods used party-affiliation formulas of one sort or another. After the most recent change in 1996, appellants sued the county and others in the United States District Court, claiming that § 5 of the Voting Rights Act of 1965, 79 Stat. 439, as amended, 42 U. S. C. § 1973c, required that the changes be precleared.

A three-judge court held that preclearance was not required because the county was simply exercising, under the state statute, its "discretion to adjust [the procedure for appointing election judges] according to party power." App. to Juris. Statement 4a. The court apparently concluded that this "discretionary" use of political power meant that the various methods for selecting election judges were not covered changes under § 5. The court also concluded that the Justice Department's preclearance of a 1985 submission from the State—the recodification of its entire election code—operated to preclear the county's use of partisan considerations in selecting election judges. The court denied injunctive relief, and later dismissed appellants' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Appellants have brought both of these rulings here.

We believe that the decision of the District Court is inconsistent with our precedents. First, in NAACP v. Hampton County Election Comm'n, 470 U. S. 166, 178 (1985), we held that even "an administrative effort to comply with a statute that had already received clearance" may require separate preclearance, because § 5 "reaches informal as well as formal changes." Thus, the fact that the county here was exercising its "discretion" pursuant to a state statute does not shield its actions from § 5. The question is simply whether the county, by its actions, whether taken pursuant to a statute

or not, "enact[ed] or [sought] to administer any . . . standard, practice, or procedure with respect to voting different from" the one in place on November 1, 1972. § 5. The fact that the county's new procedures used political party affiliation as the selection criterion does not mean that the methods were exempt from preclearance.

Second, the State's 1985 submission (the recodification and a 30-page summary of changes to the old law) indicated that the only change being made to the statute concerning election judges was a change to "the beginning date and duration of [their] appointment." Thus, neither the recodified statute nor the State's explanations said anything about the use of specific, partisan-affiliation methods for selecting election judges. This submission was clearly insufficient under our precedents to put the Justice Department on notice that the State was seeking preclearance of the use of partisan affiliations in selecting election judges. See, *e. g., Young* v. *Fordice,* 520 U. S. 273, 286–287 (1997); *Lopez* v. *Monterey County,* 519 U. S. 9, 15 (1996); *Clark* v. *Roemer,* 500 U. S. 646, 658–659 (1991).

Because the parties agree that the record is silent as to the procedure used by Dallas County for appointing election judges as of November 1, 1972, the date on which Texas became a covered jurisdiction under the Voting Rights Act, we cannot make a final determination here as to whether preclearance is in fact required. We therefore vacate the judgment of the District Court in No. 96–1389, dismiss the appeal from the District Court's interlocutory judgment in No. 96–987, see *Shaffer* v. *Carter,* 252 U. S. 37, 44 (1920), and remand the cases for further proceedings.

*It is so ordered.*