CARL E. STEWART, Circuit Judge,
dissenting:
The majority has held that the district court clearly erred in finding that the plaintiffs were prevailing parties, and that therefore the district court abused its discretion in awarding the plaintiffs -attorneys’ fees under 42 U.S.C. § 1973l(e). While I agree that the catalyst theory is the appropriate basis upon which to decide this case, I cannot agree with the conclusion reached by the majority. For the following reasons I respectfully dissent.
This court reviews the district court’s award of attorneys’ fees for abuse of discretion, and the underlying factual findings are reviewed for clear error. See League of United Latin American Citizens No. 4552 (LULAC) v. Roscoe Independent School District, 119 F.3d 1228, 1232 (5 th Cir.1997). This court has clearly emphasized that a district court has broad discretion in determining the appropriate award of attorneys’ fees. See Associated Builders and Contractors of Louisiana Inc. v. Orleans Parish School Board, 919 F.2d 374, 379 (5 th Cir.1990); LULAC, 119 F.3d at 1232. The determination of attorneys’ fees is an “intensely factual” inquiry, and thus the district court’s broad discretion in this area is appropriate because of the district court’s superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters. Associated Builders, 919 F.2d at 379 (quoting Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)); see also Posada v. Lamb County, Tex., 716 F.2d 1066, 1072 (5 th Cir.1983). Viewing the facts of the present case from this deferential standard of review, and considering the broad discretion that should be accorded the district court in this area I cannot agree with the majority that the district court clearly erred in its factual findings, and abused its discretion in awarding attorneys’ fees to the plaintiffs.
To establish prevailing party status under the catalyst theory,[1] the plaintiffs must *324 demonstrate (1) that the relief they sought was in fact obtained, and (2) that the suit itself caused the defendant to alter its conduct. See Pembroke v. Wood County, 981 F.2d 225, 230 (5 th Cir.1993). The majority opines that the plaintiffs filed this action solely to enforce the preclearance procedures mandated by § 5 of the Voting Rights Act, and that when the Texas legislature adopted a method of appointment that was different from the one specifically advocated by either the plaintiffs or defendants, the plaintiffs “went home empty handed”. The record, however, does not support the majority’s conclusion.
The plaintiffs, a group of African-American and Hispanic voters of Dallas County who had served as election judges, brought this complaint after the Commissioners Court of Dallas County (“defendants”) sought to make changes in the appointment procedures for election judges. These changes which were adopted September 3, 1996 (“1996 Order”) meant that the plaintiffs would lose their positions as election judges. The plaintiffs’ original complaint, filed on October 3, 1996, alleged that the defendants changed the procedures for appointing election judges without the preclearance of the Department of Justice, as required under § 5 of the Voting Rights Act. The plaintiffs sought declaratory and injunctive relief to block the implementation of any procedure that was not precleared, including a specific declaration that the 1996 Order was not legally enforceable. The plaintiffs were immediately successful on two fronts. First, the district court granted the plaintiffs’ request for a temporary restraining order which blocked the defendants from implementing the 1996 Order. Furthermore, a few days after the district court issued the temporary restraining order the defendants rescinded the 1996 Order, and implemented a different procedure which granted the Commissioners Court of Dallas County discretion in selecting the election judges (“October Order”). As a result of the defendants response to the temporary restraining order the plaintiffs were successful in one of their goals for the litigation which was to insure that the 1996 Order was not implemented. While the plaintiffs did not achieve this goal through a declaration from the district court that the 1996 Order was legally unenforceable, it is clear from the record that the defendants abandoned the 1996 Order in response to the litigation. The defendants abandoned the 1996 Order only five days after the temporary restraining order was issued that resulted in a short term cessation of the implementation of the 1996 Order. This court has recognized that when a lawsuit motivates a defendant to take voluntary action to alleviate the conditions outlined in the complaint, the plaintiff can be considered a prevailing party although they received no judicial decree. See Pembroke, 981 F.2d at 230.
The second goal of the plaintiffs’ complaint was to have the procedures for appointing election judges precleared by the Department of Justice as prescribed in § 5 of the Voting Rights Act. After the defendants abandoned the 1996 Order and replaced it with a discretionary method of selecting election judges, the plaintiffs amended their complaint seeking § 5 pre-clearance of this procedure. The defendants steadfastly maintained throughout this litigation that the procedures to select election judges were not subject to pre-clearance under § 5 of the Voting Rights Act because these were discretionary activities as provided for in the Texas Election Code, which was precleared in 1985. The three judge district court agreed with the defendants’ theory and refused the plaintiffs’ application for a permanent injunction on the grounds that the defendants’ procedures were a proper exercise *325 of discretion granted by the state election statute.
Despite this setback, the plaintiffs were eventually successful in receiving a judicial declaration that the procedures for appointing election judges are subject to the requirements of § 5 of the Voting Rights Act. The Supreme Court, in Foreman v. Dallas County, 521 U.S. 979, 980, 117 S.Ct. 2357, 138 L.Ed.2d 972 (1997) held that the actions of the Commissioners Court of Dallas County in selecting election judges may require preclearance because the County’s exercise of its discretion under the Texas Election Code does not shield its actions from § 5.[2] Foreman v. Dallas County, 521 U.S. 979, 980, 117 S.Ct. 2357, 2358, 138 L.Ed.2d 972. This Supreme Court decision meant that the defendants would no longer be able to implement any procedure for appointing election judges without meeting the requirements of § 5 of the Voting Rights Act, including preclearance if the defendants sought to implement procedures that had not previously been pre-cleared.
The Supreme Court remanded the case for further proceedings, but while the case was on appeal to the Supreme Court the Texas Legislature amended § 32.002 of the Texas Election Code to provide that all precinct election judges would be chosen based on the results from the gubernatorial elections (“gubernatorial method”). Texas submitted the gubernatorial method for Preclearance from the Department of Justice which was granted by the Attorney General in September 1997. Thus, the October 1996 Orders which were the subject of this litigation were superceded by the precleared gubernatorial method of selection adopted by the Texas legislature. As a result of the legislation the plaintiffs were all reappointed as election judges, and the defendants were forced to implement a system of selection which was pre-cleared under § 5 of the Voting Rights Act.
The actions of the Texas legislature helped provide the plaintiffs with one aspect of the relief they sought by forcing the defendants to adopt a precleared method of appointing election judges. Therefore to be prevailing parties under the catalyst theory the plaintiffs must demonstrate that their suit was a significant contributing factor in the Texas legislature’s actions. See Posada, 716 F.2d at 1072. The lawsuit need not be the sole reason for the legislature’s action, but the plaintiffs’ actions must have made an important contribution to the improvements which were achieved. Id.
The majority finds that the district court clearly erred in finding that there was a causal link between the plaintiffs’ lawsuit and the actions of the Texas legislature. Specifically, the majority holds that the district court clearly erred in its reliance on the affidavits of three Texas legislators to establish this causal link. I disagree with the majority that the district court clearly erred in relying on these affidavits.
The majority cites Bread Political Action Committee v. Federal Election Committee, 455 U.S. 577, 582 n. 3, 102 S.Ct. 1235, 71 L.Ed.2d 432 (1982) for the proposition that no single legislator, or even a group of three legislators has sufficient personal knowledge to declare the overall intent of the legislature. In Bread Political Action Committee, the Supreme Court interpreted the language of the Federal Election Campaign Act of 1971 (“FECA”). The plaintiffs argued that to interpret the meaning of FECA the Court should not rely solely on the language of the statute but instead should expansively construe the statute. See Bread Political Action Comm., 455 U.S. at 581, 102 S.Ct. 1235. As part of their evidence to convince the Court to adopt this expansive construction of FECA the plaintiffs offered the affidavit *326 of the senator who sponsored the amendment as proof that the legislature intended for the bill to be liberally construed by the courts. The senator’s opinion contradicted the language of the bill itself, and the Court concluded that the senator’s statements should be given no probative weight regarding the legislative intent. See Bread, 455 U.S. at 582 n. 3, 102 S.Ct. 1235.
The present case is clearly distinguishable from Bread because in this case the district court did not rely on the affidavits of the Texas legislators to interpret the meaning of the Texas Election Code, or the legislative intent in regards to how the statute should be applied. Instead the plaintiffs offered these affidavits to demonstrate that their lawsuit was a catalyst in the passage of the legislation, including motivating the introduction of the legislation. The question in Bread was legislative intent, and the question in this case is legislative motive. In determining legislative motive it is helpful to examine different factors.
It is logical that in seeking to interpret the meaning of a statute that courts should reject the post-hoc opinions of legislators as controlling evidence because the courts already have adequate information that can be gleaned from the language of the statute itself or the official legislative history. See Bread, 455 U.S. at 580, 102 S.Ct. 1235 (stating that analysis of the issue of statutory construction must begin with the language of the statute itself). However, what will often not be found in the language of a statute or the official legislative history is the motivation for introducing a bill, or each member of the legislatures reasons for supporting the legislation. The majority acknowledges that legislative history is often “insufficient, unhelpful or confusing.” Absent a holding that a party can never conclusively establish that a lawsuit is a catalyst for legislation because of the impreciseness of the proof available, we must acknowledge some reasonable method for parties to prove that their actions were a catalyst in the passage of legislation. One reasonable method of establishing that a lawsuit was a significant factor in the introduction and passage of legislation is to determine the legislators’ motivation by considering the legislators’ statements about their motivation.
The plaintiffs received affidavits from three Texas legislators, Senator Royce West (“Senator West”), Representative Debra Danburg (“Representative Dan-burg”), and' Representative Terri Hodge (“Representative Hodge”). Senator West stated that he introduced Senate Bill 130, which advocated the gubernatorial method of appointing election judges after hearing about the defendants’ 1996 Order which would have altered the selection procedures. Senator West further revealed that he attended a public meeting to voice his concerns to the defendants about the change of procedures in choosing presiding election judges. Finally, Senator West stated that he was involved in discussions with the plaintiffs’ counsel about pursuing the present lawsuit, and that the present lawsuit served as a catalyst for his introduction of the legislation in the Texas Senate. The majority states that the legislators do not have personal knowledge of the motivations of the legislature, however, as the sponsor of the Senate bill Senator West certainly has personal knowledge of what caused him to introduce the legislation which eventually was passed into law by the legislature.
Representative Danburg, who serves as the chair of the Texas House of Representatives Committee on Elections, introduced House Bill 331 which was similar to Senator West’s Senate bill in that it also advocated the use of the gubernatorial method for appointing election judges. Representative Danburg stated that when she introduced House Bill 331 she was aware of the lawsuit and it served as a catalyst for her to introduce the bill, and that the lawsuit was a causal factor in the action taken by the legislature. It is difficult to dispute that a legislator knows their own motiva *327 tions for introducing bill and what influenced them to take that action.
Representative Hodge who is a member of the Dallas County delegation to the Texas House of Representatives declared that she became aware of this lawsuit in the Fall of 1996, this lawsuit was the subject of conversation among her colleagues in the legislature, and that the lawsuit was a catalyst in the bringing about the legislative action.
It is important to note that the defendants offered no affidavits or evidence that contradicted the sworn testimony of these three Texas legislators who all clearly stated that the present lawsuit was a significant factor in the introduction and passage of the legislation which forced the defendants to adopt the precleared gubernatorial method for appointing election judges. The only support the defendants offered to bolster their argument that the lawsuit was not a catalyst for the legislation was a copy of a 1995 house bill with almost identical language to the language used in Senate Bill 130 and House.Bill 331. The majority determines that the existence of a bill which proposed the gubernatorial method of selection before the lawsuit was filed demonstrates that the 1997 legislation was already under consideration by the Texas legislature, and therefore the 1997 legislation could not have been catalyzed by the plaintiffs’ lawsuit. However, the 1995 bill which passed in the Texas House was not adopted by the Texas Senate. Therefore, a bill proposing the gubernatorial method of appointment was not under consideration by the legislature when the plaintiffs filed their lawsuit in the fall of 1996. Moreover, there is no support in the case law for the notion that the preexistence of a legislative concept is a per se bar to an evidentiary determination of catalytic effect. Senator West and Representative Danburg who introduced the 1997 bills in the Senate and Houses were unequivocal in their testimony that it was the plaintiffs’ lawsuit that was the catalyst for their introduction of the bill. The majority does not appear to question the truthfulness or veracity of Senator West or Representative Danburg’s testimony. Therefore, absent the presence of contradicting affidavits or other substantive evidence the defendant’s alternative explanation of the 1995 bill as a motivation for the-legislator’s introduction of the 1997 bill was correctly found by the district court to be unavailing.[3]
Finally, the majority cites Milton v. Shalala, 17 F.3d 812 (5 th Cir.1994) for their proposition that it is difficult to establish a causal connection between the legislature’s actions and an individual suit. In Milton, this court rejected a plaintiffs claim for attorneys’ fees where the plaintiff was one of the thousands of litigants whose lawsuits may have helped spur the enactment of a social security disability reform act. The panel stated that the mere possibility that the United States Congress acted because of an individual claimant’s suit is too speculative to credit a change in the federal law to a claimant’s individual lawsuit. Milton, 17 F.3d at 815. I do not quarrel with the holding in Milton. Unlike Milton, the present plaintiffs’ lawsuit was not simply one of thousands of lawsuits that all sought redress for the same complaint making it difficult to establish a nexus between any one of the many lawsuits and the congressional action. The record does not indicate that there were any other lawsuits pending to address appointment procedures for election judges *328 in Texas. Unlike Milton, the plaintiffs’ action in this case was unique in its challenge, and is specifically credited by the sponsoring legislators as a catalyst in the introduction and passage of the legislation. Furthermore, there is no indication that the plaintiff in Milton offered any evidence to establish a causal link between his individual lawsuit and the congressional action taken. In contrast, these plaintiffs have offered the uncontradicted, sworn declarations of three Texas legislators who state that the present lawsuit was a catalyst in the passage of the 1997 legislation.
For the above reasons I disagree with the majority that the district court clearly erred in finding that the plaintiffs’ lawsuit was not a substantial factor in the passage of legislation which forced the defendants to adopt the precleared gubernatorial method of appointing election judges. The plaintiffs met the goals of their lawsuit in that the lawsuit caused the defendants to abandon the 1996 order. The plaintiffs also received a favorable decision from the Supreme Court that the appointment procedures for election judges are subject to § 5 of the- Voting Rights Act. Finally, the plaintiffs were reappointed to their offices as election judges. This occurred as a result of the 1997 Texas legislation which forced the defendants to modify their procedures. According to all the substantive evidence presented to the district court this new legislation was catalyzed by the .plaintiffs’ lawsuit. The factual determinations of the district court are amply supported by the record. Therefore, the district court did not abuse its discretion in awarding attorneys fees to the plaintiffs under 42 U.S.C. § 1731(e). Accordingly, I respectfully dissent.

. In deciding this case the majority applies the catalyst theory, but states that “the continuing validity of the catalyst theory is in serious doubt” due to the Supreme Court's decision in Farrar v. Hobby, 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). The majority declines to decide whether the catalyst theory still applies in this Circuit, however, it is critical to acknowledge that post-Farrar this Circuit and the majority of *324 other circuits have continued to apply the catalyst theory. See, e.g., Pembroke v. Wood County, 981 F.2d 225, 231 n. 27 (5 th Cir.1993); Craig v. Gregg County, 988 F.2d 18 (5 th Cir.1993); Ellis v. University of Kansas Medical Center, 163 F.3d 1186 (10 th Cir.1999); Zinn v. Shalala, 35 F.3d 273 (7 th Cir.1994).

. The Supreme Court did not make a final determination whether preclearance was required for the October Order because the record did not contain sufficient information. See Foreman, 521 U.S. at 981, 117 S.Ct. 2357.

. The majority states that their conclusion that the three Texas legislators’ statements are not sufficient evidence is strengthened by the fact that plaintiffs’ point to no other evidence in the legislative record which affirmatively shows that the Texas legislature acted in response to the plaintiffs' lawsuit. However, there was one mention of the lawsuit in the legislative record. Steve McDonald, an employee of the Texas Democratic party, submitted an affidavit to the district court which stated that he testified about the 1997 bill in the Texas Senate, and during his testimony specifically cited this litigation as a reason for the Senate to adopt the bill. No counter affidavit is found in the record.