Marty CONNORS, Plaintiff,
Counterclaim Defendant,

George Nathan GRISHAM, Plaintiff,

v.

Jim BENNETT, et al., Defendants.

Steve Flowers, in his individual capacity, Defendant–Intervenor, Cross–Claimant, Counterclaimant,

v.

Jim Bennett, et al., Cross–Claim Defendants.

No. CIV.A.02–A–482–N.

United States District Court,
M.D. Alabama,
Northern Division.

May 17, 2002.

Dorman Walker, Balch & Bingham, Montgomery, Edward S. Allen, Allen M. Estes, Balch & Bingham, Birmingham, for Marty Connors, plaintiffs.

John J. Park, Jr., Office of the Attorney General, Charles E. Grainger, Jr., Asst., Atty. General, Alabama Secretary of State's Office, Montgomery, Jeffrey M. Sewell, Birmingham, for Jim Bennett, Alabama Secretary of State, Mike Bolin, Probate Judge of Jefferson County, Alabama, Anne–Marie Adams, Circuit Clerk For Jefferson County, Alabama, Earl Carter, Circuit Clerk For The Bessemer Division, Jefferson County, Alabama, Robert M. Martin, Probate Judge For Chilton County, Alabama, Mike Smith, Circuit Clerk For Chilton County, Alabama, Jerry Pow, Probate Judge For Bibb County, Alabama, John H. Stacy, Circuit Clerk for Bibb County, Alabama, Patricia Y. Fuhrmeister, Probate Judge for Shelby County, Alabama, Mary H. Harris, Circuit Clerk for Shelby County, Alabama, defendants.

Before FRANK M. HULL, Circuit Judge, W. HAROLD ALBRITTON, Chief District Judge, and MYRON H. THOMPSON, District Judge.

*MEMORANDUM OPINION*

FRANK M. HULL, Circuit Judge.

This three-judge court has been convened to hear a case implicating the preclearance mandate of Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c. Plaintiffs are Marty Connors, the chairman of the Alabama Republican Party, and George Nathan Grisham, a registered voter in Alabama State Senate District 14. Defendants are the Alabama Secretary of State Jim Bennett and nine local election officials for the counties included in Alabama State Senate District 14 (collectively, "State Defendants"). This dispute centers around the attempted removal of a certified candidate for Alabama State Senate District 14, Defendant–Intervenor Steve Flowers, from the Republican primary ballot for the primary election scheduled for June 4, 2002.

After receiving the final certification of candidates from the Alabama Republican Party ("the Party"), the Secretary of State timely certified Flowers to the local election officials as a candidate for the Republican nomination for Alabama State Senate District 14. Under Alabama Code § 17–16–11, the statutory deadline for the Secretary of State's certification is 50 days prior to the primary election. After the passage of that statutory deadline and at the Party's request, the Secretary of State directed the local election officials to delete Flowers' name. Flowers sued the Secretary of State and the nine local election officials in state court. After an evidentiary hearing, the state court preliminarily enjoined the defendant officials from removing Flowers' name from the Republican primary ballot. Plaintiffs request this court to enjoin the state court's injunction. Plaintiffs contend that the Secretary of

State has a long-standing practice of amending certifications to local election officials after the 50–day statutory deadline, and that the state court's injunction order constituted a change related to voting that must be precleared under Section 5 for it to be enforced.

On May 14, 2002, this court held a combined hearing on Plaintiffs' motion for a preliminary injunction and trial on the merits. At the conclusion thereof, we found against Plaintiffs and denied the relief requested by Plaintiffs. We issue this Memorandum Opinion to explain the basis for our decision.

## I. BACKGROUND

### A. General Facts

The court finds the following facts are not disputed in the record.[1]

1. The Alabama Republican Party's 2002 primary election is scheduled for Tuesday, June 4, 2002.

2. One of the positions included in the Alabama Republican Party primary is Alabama State Senate District 14, which includes all or parts of Bibb, Chilton, Jefferson, and Shelby counties.

3. The qualifying period for Republican candidates for Alabama State Senate District 14 ran from February 9, 2002, until April 5, 2002.

4. Defendant–Intervenor Steve Flowers filed as a candidate in the Alabama Republican Party primary for Alabama State Senate District 14 on February 9, 2002, and amended his filing on February 15, 2002.

5. On or about April 5, 2002, a challenge to Flowers' candidacy based

---

1. The majority of these facts are based on the written stipulations entered into by all parties to this case. To the extent some limited addi-

tional facts are included, this court has found those facts based on the evidence presented during the proceedings on May 14, 2002.

on his residency was filed by Carlton and Brenda Lamond with the Alabama Republican Party.

6. On April 9, 2002, the Alabama Republican Party Steering Committee scheduled a hearing on the challenge to Flowers' candidacy for April 15, 2002.

7. The fifty-fifth day before the June 4, 2002, primary election (April 10, 2002) is the deadline under Alabama law for political parties to certify lists of their candidates for state office in the June 4, 2002, primary election to the Alabama Secretary of State. *See* Ala.Code § 17–16–11.

8. On April 10, 2002, the Alabama Republican Party submitted its "final certified list of candidates for state, federal, and judicial offices" to the Secretary of State via hand-delivered letter. Flowers was listed on this document as one of four Republican candidates for Alabama State Senate District 14.

9. No candidates for Alabama State Senate District 14 were submitted to the Secretary of State by the Alabama Democratic Party.

10. The winner of the June 4, 2002, Republican primary will, in effect, be the only major-party candidate for Alabama State Senate District 14 on the ballot in the general election in November 2002.

11. The fiftieth day before the June 4, 2002, primary election (April 15, 2002) is the deadline under Alabama law for the Secretary of State to submit the names of candidates for state office to county election officials. *See* Ala.Code § 17–16–11.

12. On the afternoon of April 15, 2002, the Alabama Republican Party Ex-

ecutive Committee's Candidate Committee voted prior to 5 p.m. CST to remove Flowers' name from the list of qualified Republican candidates in the June 4, 2002, primary for Alabama State Senate District 14 after considering the challenge to his candidacy based on the residency requirement.[2]

13. The Alabama Republican Party did not inform the Secretary of State of its decision regarding Flowers on April 15, 2002.

14. On or about April 15, 2002, Defendants Jerry Pow, Probate Judge of Bibb County, Robert M. Martin, Probate Judge of Chilton County, Mike Bolin, Probate Judge of Jefferson County, and Patricia Y. Fuhrmeister, Probate Judge of Shelby County, received from Secretary of State Bennett a certification of names of candidates to be included on the primary election ballot in their respective counties. Among the candidates certified in the Alabama Republican Party primary for Alabama State Senate District 14 was Steve Flowers.

15. On April 16, 2002, the Alabama Republican Party informed the Secretary of State in writing of its decision to disqualify Flowers as a Republican candidate for Alabama State Senate District 14.

16. On or about April 17, 2002, Probate Judges Pow, Martin, Bolin, and Fuhrmeister received a document dated April 16, 2002, from Secretary of State Bennett which informed them that the Alabama Republican Party had determined that Flowers was not qualified to serve

---

2. During the trial, Plaintiffs indicated that Flowers' disqualification by the Alabama Republican Party's Candidate Committee was by a majority vote of 10 to 8.

as a candidate for Alabama State Senate District 14 in the Alabama Republican Party primary, and that his name should not appear on the ballot for that position.

17. The Alabama Republican Party did not request any other deletions from the list of its candidates for Alabama State Senate District 14, leaving three other Republican candidates on the June 4, 2002, primary ballot.

18. On April 17, 2002, Flowers filed a complaint in the Circuit Court of Montgomery County, Alabama, seeking an order requiring the defendants "to take all necessary actions that would result in the name of [ ] Steve Flowers being placed upon the ballot for the June 4, 2002, Republican primary election for the office of State Senate District 14." [3]

19. On April 18, 2002, the Circuit Court of Montgomery County, Alabama, held a hearing on Flowers' case and issued a temporary restraining order directing the defendants (Secretary of State Bennett and the circuit clerks and Probate Judges of the counties covered by Alabama State Senate District 14) to stop all printing of ballots until the court's preliminary injunction hearing on April 22, 2002.

20. On April 18, 2002, the Secretary of State filed Emergency Rule 820–2–5–.01ER *et seq.* (filed as Plaintiffs' Exhibit 38) with the Alabama Legislative Reference Service. This rule set forth in writing procedures used by the Secretary for amending certified candidate lists previ-

ously submitted to county election officials. The text of this Emergency Rule states that it is codifying "a long-standing practice" of the Secretary of State to receive and forward such amended certified candidate lists. Specifically, the Emergency Rule states, in part, as follows:

(1) The Secretary of State finds that a long-standing practice of permitting amendments to certifications has functioned to correct and modify certifications of candidates by political parties. These amendments are designed to correct errors in certifications (such as name spellings and the office sought) and exercise the authority of the political party in determining candidates for office either through correcting omissions, disqualifications, and the filling of vacancies.

Ala. Emerg. R. 820–2–5–.02ER (filed April 18, 2002). The Emergency Rule refers to "a long-standing practice" but does not state when that practice began.

21. On April 22, 2002, the Circuit Court of Montgomery County, Alabama, held a hearing on Flowers' motion for a preliminary injunction.

22. On April 23, 2002, the Circuit Court of Montgomery County, Alabama, entered an order preliminarily enjoining and ordering Secretary of State Bennett and the circuit clerks and Probate Judges to prevent the removal of Steve Flowers' name, without his consent, from the Alabama Republican Party's primary election ballot. The state court reasoned as follows:

---

**3.** *Flowers v. Bennett,* Case No.2002–1096–PR (Circuit Court of Montgomery County, Ala., filed April 17, 2002). The defendants in that state court case are identical to State Defendants in this federal case—Secretary of State Bennett and the nine local election officials for the counties included in Alabama State Senate District 14.

The Court finds it reasonably likely that Petitioner Flowers will prevail on the merits. Ala.Code 1975 § 17–16–11(b) provides that, for primary elections, the state party chair must certify the names of candidates not later than 55 days before the election. The Republican chair did just that. Thereupon, in compliance with § 17–16–11, on April 15, 50 days before the primary election, the Secretary of State provided to probate judges a certified list of candidates, including the name of Petitioner Flowers, for inclusion on the primary election ballot. *See* Petitioner's Exhibit 3.

It is reasonably likely that Bennett's subsequent effort to alter the certified list of candidates to exclude the name of Petitioner Flowers, after it was provided to local election officials on the statutory deadline, was not authorized by law. Adherence to deadlines in the administration of elections is important to even-handedness. It is not likely that the legislature meant to allow changes in the candidates after the primary qualifying deadline, for reasons other than voluntary withdrawal or correction of typographical errors. This case involves a candidate whose legal qualifications are in dispute; it does not involve a voluntary candidate withdrawal or a requested typographical correction.

Contrary to the claims made by Bennett's counsel, Ala.Code 1975 § 17–16–12 provides no authorization to abandon the deadlines set out in § 17–16–11 . . . .

The certifications should not be subject to alteration, in the name of obedience to § 17–16–12, after the deadline set out in § 17–16–11. If the deadline for certifications was subject to being disrupted by the requirements of § 17–16–12, the possibility of varied determinations of qualifications by the affected election officials would create the potential for conflicting resolution of candidate qualifications. It is more likely that the legislature intended to foster orderly electoral administration by setting specific deadlines by which specific acts must be completed, and thus, § 17–16–11 provides the time limits for any pre-primary remedy pursuant to the provisions of § 17–16–12.

Mem. Op. at 8–10 (footnote omitted).

23. On April 23, 2002, Secretary of State Bennett and the other local election officials named in the state court lawsuit, with the exception of Judge Bolin, filed a notice of appeal to the Alabama Supreme Court. The appeal remains pending.

24. On April 23, 2002, the Alabama Attorney General wrote the United States Department of Justice Civil Rights Division asking if the preliminary injunction issued by the Circuit Court of Montgomery County, Alabama, constituted a change related to voting under Section 5 of the Voting Rights Act of 1965. The letter advises the Department of Justice that the Secretary of State has "a long-standing administrative practice" of accepting amendments to a party's candidate lists after the 50–day deadline set for primary elections and further advises that the practice "was in place in 1962 and in the spring of 1964," as follows:

The Secretary of State has a long-standing administrative practice of accepting amendments to the party candidate lists and communicating them to the probate judges after the 50th day before the primary election. In fact, we have determined that this practice was in place in 1962 and in

the spring of 1964 and, thus, predates the effective date of the Voting Rights Act.... Because the Circuit Court's Order changes a voting practice that has been in place since before the effective date of the Voting Rights Act, it appears to require preclearance before a state election official can follow it.

(Plaintiffs' Exhibit 3)

25. On April 24, 2002, in response to the Alabama Attorney General's letter, the United States Department of Justice Civil Rights Division wrote that based on the information provided the preliminary injunction would constitute a change related to voting under Section 5 of the Voting Rights Act of 1965.

26. On April 25, 2002, the Alabama Supreme Court denied an emergency motion to dissolve or stay the injunction issued by the Circuit Court of Montgomery County, Alabama.

27. The fortieth day before the June 4, 2002, primary election (April 25, 2002) was the deadline for county election officials to print and deliver absentee ballots to absentee election managers. *See* Ala.Code § 17–10–12.

28. Absentee ballots have already been printed by the four counties covered by Alabama State Senate District 14 and mailed to absentee voters requesting ballots. These ballots include Flowers as a Republican candidate for Alabama State Senate District 14. As of May 13, 2002, absentee ballots have already been returned in three of the four counties.

29. After certifying Flowers as a candidate to the local election officials and after the 50–day deadline in Alabama Code § 17–16–11 for certifying candidates, the Secretary of State withdrew the name of Steve Flowers solely upon the request of the Alabama Republican Party, without making an independent legal determination that Flowers was not a qualified candidate.

30. The current version of 1975 Alabama Code § 17–16–11 was precleared under Section 5 of the Voting Rights Act of 1965 in 1986, and amendments that pertain only to the 1992 election were precleared in 1992.

31. The current version of 1975 Alabama Code § 17–16–12 was precleared under Section 5 of the Voting Rights Act of 1965.

32. No submissions have been made to the United States Department of Justice, or to the United States District Court for the District of Columbia, for preclearance under Section 5 of the Voting Rights Act of 1965 related to any of the practices, court orders or emergency rules described in these facts other than § 17–16–11 and § 17–16–12 of the 1975 Alabama Code.

33. Plaintiff Grisham is a resident and qualified elector of Alabama State Senate District 14.

Although the above facts are generally undisputed, we now turn to the heart of the controversy in this case.

**B. Facts Regarding Nature and Duration of "Long-standing Practice"**

The parties hotly dispute the nature and duration of the Secretary of State's "long-standing practice" of amending candidate certifications after the 50–day statutory deadline. Thus, we discuss our factual findings in that regard.

34. The record contains 10 letters written between March 27, 1962, and April 8, 1964, which reflect amendments to certifications that occurred prior to November 1, 1964.[4] One letter involves the correction of a clerical error. (State Defendants' Exhibit 18) In four letters, the Secretary of State advises the local election official that she received authority "to withdraw the name" of a particular candidate. (State Defendants' Exhibits 9, 12, 13, 15) In one letter, the Secretary of State advises the local election official that she received authority "to remove the following names" of particular candidates. (State Defendants' Exhibit 17) In four letters, the chairman of the Alabama Democratic Party writes the Secretary of State that "[t]his is your authority to withdraw the name" of a particular candidate. (State Defendants' Exhibits 10, 11, 14, 16) There is no reference to disqualification, much less a contested disqualification, in any of these letters.

35. The record contains one letter written in 1970 which reflects amendments to certifications. In that letter, an official of the Alabama Democratic Party requests that the Secretary of State "withdraw" the names of particular candidates. (State Defendants' Exhibit 101)

36. The record contains at least 57 letters and other documents written between 1980 and 1988 which reflect amendments to certifications. (State Defendants' Exhibits 25–34, 36–39, 43–44, 46–57, 61–65, 70–80, 82–91, 94–95) These 1980–88 letters and documents fall into three general types: (1) correction of clerical errors in the candidate's name or office sought; (2) withdrawal requests stating either that "I wish to withdraw" or that a name should be withdrawn as the candidate has "submitted his resignation" or requesting "withdrawal" or "removal" of a candidate's name without further explanation; and (3) letters advising that the "State Democratic Executive Committee has disqualified" a named candidate and requesting "removal" of his name from the ballot.

37. The record contains nine letters written between April 12, 2002, and April 16, 2002, which reflect amendments to certifications. The letters fall in these categories: (1) two confirm that a candidate "is no longer running" and "should not appear on the primary ballot"; (2) three correct clerical errors in various candidates' names; (3) one letter corrects clerical errors in four candidates' names and removes four other candidates stating they "withdrew"; (4) one letter states to "withdraw" a candidate; and (5) two letters relate to disqualifications of several candidates. One of the disqualification letters involves Flowers and states as follows:

On April 15, 2002, the Candidate Committee of the Alabama Republican Executive Committee heard challenges to the declarations of candidacy of three individuals who had sought to appear on the 2002 Republican primary ballot. After considering evidence and legal arguments from each of the candidates and challengers, all

---

**4.** As will be discussed later in this opinion, Alabama's policies related to voting in effect on November 1, 1964, may not be altered after that date without federal approval under Section 5 of the Voting Rights Act of 1965.

of whom were present in person and/or through counsel, the Committee upheld each of the challenges and by majority vote disqualified each of the following as a Republican primary candidate for the office indicated .... The Secretary of State is hereby requested not to include these names on the June 4, 2002 Republican primary ballot for these offices.

(Plaintiffs' Exhibit 29) None of the letters prior to November 1, 1964, contain anything similar to the letter concerning Flowers.

38. Alabama Department of Archives and History archivist Rickie Louise Brunner testified at the state court hearing that she researched the Secretary of State's election files pursuant to a request from the Secretary of State. She located, and authenticated at the hearing, the 10 letters written between March 27, 1962, and April 8, 1964. In response to Flowers' question as to whether "in your research, did you find any records that indicated that there was a challenge to any of these changes that are documented" in the letters, Brunner responded, "I saw none." (State Defendants' Exhibit 39, p. 88)[5]

39. The Secretary of State's Director of Elections, Vickie Balogh, also testified at the state court hearing. She testified that, based on her experience working for the Secretary of State since 1989 and review of records beginning with the 1980 election cycle, post-certification amendments after the 50–day deadline had been accepted by the Secretary of State since at least 1980.

During Flowers' cross-examination of Balogh, the following exchange was recorded:

Q: How many of those situations were challenges where someone said, no, you can't make this change or amendment to the certification as the Secretary of State had proposed?

A: I don't have any knowledge of that. And a lot of the changes that we received, you know, it was just a statement from the party. You know, I may have read something in the paper that oftentimes we didn't, you know, get an official notification of why a person's name was being withdrawn.

Q: Are these changes primarily things like correcting misspellings in a candidate's name?

A: Probably the majority are the changes, but we do have withdrawals.

Q: Okay. But have you ever had a post certification challenge to an amendment that was opposed by the candidate in any of the records that you looked at?

A: I don't recall finding that situation, but I wasn't really looking for that situation, either.

Q: So as far as you know here today, this is the first time?

A: Yes.

(State Defendants' Exhibit 39, pp. 78–79)

## II. DISCUSSION

With this factual background, we turn to the Voting Rights Act and the parties' claims.

---

5. By agreement of the parties, the transcript of the testimony at the state court hearing was admitted into evidence during the trial of this case. The state court hearing was in *Flowers* *v. Bennett,* Case No.2002–1096–PR (Circuit Court of Montgomery County, Ala., filed April 17, 2002).

A. Voting Rights Act of 1965

■ Section 5 of the Voting Rights Act of 1965 prohibits a state with a specified history of voting discrimination, including Alabama,[6] from "enact[ing] or seek[ing] to administer any ... standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964," until the state obtains preclearance from the federal government. 42 U.S.C. § 1973c. *See Young v. Fordice,* 520 U.S. 273, 276, 117 S.Ct. 1228, 137 L.Ed.2d 448 (1997); *Boxx v. Bennett,* 50 F.Supp.2d 1219, 1223 (M.D.Ala.1999) (quoting *Lopez v. Monterey County,* 519 U.S. 9, 20, 117 S.Ct. 340, 136 L.Ed.2d 273 (1996)).[7]

■ A three-judge court reviewing a claim that Section 5 has been violated asks "(i) whether a change was covered by § 5, (ii) if the change was covered, whether § 5's approval requirements were satisfied, and (iii) if the requirements were not satisfied, what remedy is appropriate." *City of Lockhart v. United States,* 460 U.S. 125, 129 n. 3, 103 S.Ct. 998, 74 L.Ed.2d 863 (1983); *see also Boxx,* 50 F.Supp.2d at 1224; *Ward v. Alabama,* 31 F.Supp.2d 968, 971 (M.D.Ala.1998).

Given the Voting Rights Act's aim of preventing "the subtle, as well as the obvious, state regulations which have the effect of denying citizens their right to vote because of their race," the Supreme Court has broadly construed what constitutes a "change" under Section 5. *Presley v. Etowah County Comm'n,* 502 U.S. 491, 501–03, 112 S.Ct. 820, 117 L.Ed.2d 51 (1992) (quoting *Allen v. State Bd. of Elections,*

393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) and listing post-*Allen* cases). Changes may be "informal as well as formal changes." *Foreman v. Dallas County,* 521 U.S. 979, 980, 117 S.Ct. 2357, 138 L.Ed.2d 972 (1997) (quoting *NAACP v. Hampton County Election Comm'n,* 470 U.S. 166, 178, 105 S.Ct. 1128, 84 L.Ed.2d 124 (1985)). They may alter an election law in only "a minor way." *Presley,* 502 U.S. at 501, 112 S.Ct. 820 (quoting *Allen,* 393 U.S. at 566, 89 S.Ct. 817). And they may even include "an administrative effort to comply with a statute that had already received clearance," or legislation passed "in an attempt to comply with provisions of the Act." *Foreman,* 521 U.S. at 980, 117 S.Ct. 2357 (quoting *NAACP,* 470 U.S. at 178, 105 S.Ct. 1128); *Allen,* 393 U.S. at 565 n. 3, 89 S.Ct. 817. "Nor does it matter for the preclearance requirement whether the change works in favor of, works against, or is neutral in its impact upon the ability of minorities to vote. It is change that invokes the preclearance process; evaluation of that change concerns the merits of whether the change should in fact be precleared." *Young,* 520 U.S. at 285, 117 S.Ct. 1228 (citations omitted).

■ A private plaintiff bringing suit under Section 5 bears the burden of proving that a state failed to submit a covered enactment for approval under the statute. *Allen,* 393 U.S. at 555, 89 S.Ct. 817; *see also Ritter v. Bennett,* 23 F.Supp.2d 1334, 1339–43 (M.D.Ala.1998) (rejecting claim that state had failed to preclear three changes in voting procedures because

---

**6.** Alabama is a jurisdiction covered by the first sentence of Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. *See* 42 U.S.C. § 1973b(b); 28 C.F.R. § 51.4 app. (2002).

**7.** "The State may preclear a voting change in one of two ways: it may obtain a declaratory

judgment in the United States District Court for the District of Columbia, or it may submit the change to the Attorney General of the United States for approval. If the Attorney General approves the change, or fails to register an objection to the change within 60 days, the change is precleared." *Boxx,* 50 F.Supp.2d at 1223 (citing 42 U.S.C. § 1973c).

plaintiffs failed to show enactment or administration of new procedures).

We now apply these well-established principles to Plaintiffs' claim.

### B. Plaintiffs' Section 5 Claim

The parties agree that standards, practices or procedures governing amendments to the Secretary of State's certification of names on a primary election ballot are related to voting. They also agree that the statutory deadline for the Secretary of State to certify candidates to local election officials in a state race is 50 days before the primary election ("the 50–day deadline"). They further agree that no standards, practices or procedures for amendments after the 50–day deadline have been submitted for preclearance or precleared.

Plaintiffs, however, claim that the Secretary of State maintained an unwritten, but long-standing practice of amending its previously certified lists of candidates after the 50–day deadline in order to reflect changes not only due to clerical errors or withdrawals but also due to contested and involuntary disqualifications. And Plaintiffs contend that this post-deadline practice was in effect on November 1, 1964. Plaintiffs assert that the April 23, 2002, state court order enforcing the Secretary's 50–day deadline for certification in Alabama Code § 17–16–11 in Flowers' case constitutes a "change" to that long-standing, pre-existing practice. Thus, Plaintiffs submit that the state court order must be precleared to be enforced. Because the state court order has not been precleared,

Plaintiffs ask this court to enjoin that state court order.[8]

Therefore, under Plaintiffs' theory, in order to prevail, they have the burden to show (1) that the State of Alabama had a standard, practice or procedure in force and effect on November 1, 1964, to remove candidates from the ballot after the deadline for certification by the Secretary not only as a result of clerical errors or voluntary withdrawals but also involuntary disqualifications, and (2) that the April 23, 2002, state court order enjoining that practice is a change in that practice without the necessary preclearance.

As outlined below, we find that Plaintiffs have failed to carry their burden to show that the practice of amending certified candidate lists based on contested and involuntary disqualifications after the 50–day deadline was in effect or in force on November 1, 1964. Thus, we need not reach whether a state court order may be a change under the Voting Rights Act of 1965, or whether the particular state court order at issue is such a change.[9]

### C. Practice In Effect on November 1, 1964

Although many facts in this case are undisputed, the parties vigorously contest both the nature and duration of the Secretary's "long-standing practice" of amending certified candidate lists after the 50–day statutory deadline. Plaintiffs, and even State Defendants, contend that their evidence shows this practice of post-deadline amendments to certified candidate

---

**8.** Although Flowers disputes whether Plaintiff Connors has standing to pursue this claim, he does not dispute that Plaintiff Grisham has standing. Therefore, we need not address the issue of Plaintiff Connors' standing.

**9.** Flowers also submits that in no event did the state court order constitute a change subject to Section 5 preclearance. Instead, Flowers stresses that (1) Alabama Code § 17–

16–11 sets a mandatory 50–day deadline, (2) § 17–16–11 is a precleared statute, and (3) the state court order merely enforces this precleared state statute. Thus, Flowers asserts, the issue presented is whether a state court's interpretation of a precleared statute, especially if a reasonable one, constitutes a change. In light of our ruling, we also do not address this issue.

lists has functioned, both before and after November 1, 1964, (1) to correct clerical errors in the spelling of candidates' names or the office sought, (2) to remove the names of candidates who voluntarily withdrew their candidacies, and (3) to remove candidates' names based on contested and involuntary disqualifications.[10]

In contrast, Flowers contends the evidence shows that the post-deadline amendments prior to November 1, 1964, were ministerial in nature and were limited to (1) correction of clerical errors in the spellings of the candidates' names or the office sought, and (2) the removal of the names of candidates who voluntarily withdrew their candidacies. Flowers asserts that there is no evidence of any administrative practice prior to or on November 1, 1964, permitting post-deadline contested and involuntary removal of a previously certified candidate due to subsequent disqualification by a political party. Flowers emphasizes that the testimony of the state archivist and the Secretary's Elections Director supports his contention.

As to the documentary evidence, Flowers observes that the letters between 1980 and 1988, as well as in 2002, expressly refer to disqualification, but that the pre–1964 letters contain no reference to disqualification, much less a contested and involuntary disqualification as we have in this case. Instead, the pre–1964 letters show a practice only as to the correction of clerical errors and withdrawals. Plaintiffs and State Defendants respond that the pre–1964 letters as to withdrawal do not state the reason for the withdrawal and thus do not preclude a contested and involuntary disqualification as a reason. In reply, Flowers stresses that withdrawal implies the candidate withdrew as opposed to being involuntarily removed based on a contested disqualification.[11]

The problem for Plaintiffs is that they, not Flowers, bear the burden of proof on the issue of the prior 1964 practice, and they have not carried it. We agree with Flowers that there is scant, if any, factual evidence of post-deadline amendments to certifications involving contested and involuntary disqualifications of primary candidates prior to November 1, 1964. If anything, the evidence recounted above weighs heavily in the other direction.[12]

---

**10.** Plaintiffs and State Defendants have taken virtually identical positions throughout this case, including at trial and in the briefing. Although Plaintiffs bear the burden of proof, State Defendants introduced evidence at trial to aid Plaintiffs' claim. Our conclusion is made giving weight to all evidence presented.

**11.** We recognize that Plaintiffs and State Defendants have attempted to proceed at a high level of generality, arguing that because post-deadline amendments were made prior to November 1, 1964, to correct clerical errors and make other alterations based on requests to "remove" or "withdraw" names as requested by the parties, post-deadline amendments for contested and involuntary disqualifications were covered by this practice. This argument crumbles under the weight of its own illogic. It cannot be that when a state takes a limited number of discrete actions it establishes a policy that captures an unlimited universe of substantially and materially different poten-

tialities. Even under the Voting Rights Act, a newly developed practice cannot be considered a continuation of a prior practice simply because the two actions concern the same general subject.

**12.** In addition, it is noteworthy that the Alabama Secretary of State did not adopt a written rule documenting its alleged "long-standing practice" as to disqualifications until the Flowers controversy arose, and indeed apparently adopted it as an "Emergency Rule" the day after Flowers filed his state court action. In light of our conclusion that Plaintiffs (even though aided by State Defendants at trial) have not carried their burden to show that this administrative practice was in place on November 1, 1964, some consideration may be warranted by State Defendants regarding whether preclearance of this "Emergency Rule" should be pursued. However, we also do not reach that issue in light of our conclusion in this case.

Indeed, in apparent recognition of this fact, Plaintiffs, as well as State Defendants, focus more on legal arguments in support of their claim. They stress that several Alabama state court decisions adopt the general principles that (1) primary elections are conducted for the benefit of the political parties; (2) the parties hear pre-primary challenges to the political or legal qualifications of their candidates; and (3) the parties thus control what candidates are on their primary ballots. *Knight v. Gray*, 420 So.2d 247, 248 (Ala. 1982); *Ray v. Garner*, 257 Ala. 168, 57 So.2d 824 (1952). They then point out that Alabama Code § 17–16–12 provides that "[t]he name of no candidate shall be printed upon any official ballot used at any primary election unless such person is legally qualified to hold the office...." Therefore, they argue that post-deadline amendments to the Secretary's certifications based on Alabama Republican Party submissions must be allowed as a practical matter in order to allow the parties to control their primary ballots and to keep unqualified candidates off those ballots.

These arguments miss the mark as to the narrow Section 5 pre-clearance issue presented here for several reasons. First, there has been no showing that any Alabama state court appellate decision involved the Secretary of State's timely certification of a party's candidate as qualified to the local officials followed by an untimely amendment to a primary ballot that sought to involuntarily remove the candidate after the 50–day statutory deadline. Indeed, some Alabama decisions arguably suggest that statutory deadlines in voting cases should be strictly construed. *See*

*Perloff v. Edington*, 293 Ala. 277, 302 So.2d 92, 94–96 (1974).

Second, the narrow Section 5 issue here is only whether the state court order enforcing the 50–day deadline in Alabama Code § 17–16–11 is a change of a prior long-standing practice of allowing post-deadline amendments to certified candidate lists based on contested and involuntary disqualifications. This court need not reach the state law issue of how to construe Alabama Code §§ 17–16–11 and 17–16–12 because the theory of Plaintiffs' claim throughout has been only that the state court order enforcing that 50–day deadline is a change of a pre–1964 administrative practice of allowing post-deadline amendments based on contested and involuntary disqualifications. Because Plaintiffs have not carried their burden to prove that practice existed prior to or on November 1, 1964, we need not linger to answer the issues of state law on which Plaintiffs appear to rely.[13]

Third, nothing we do in this case undermines any authority the political parties have over who appears on their primary ballots. The party may still disqualify candidates, and the Secretary of State may still amend its certifications to remove disqualified candidates. The Alabama state court narrowly held only that this must be done before the 50–day deadline in order to foster orderly election administration and because "[a]dherence to deadlines in the administration of elections is important to even-handedness." We hold only that Plaintiffs have not carried their burden of proving that a practice of post-deadline amendments of certified candidate lists that remove candidates based on contested

---

13. We note that the Alabama state courts have reached different results in considering the same issues and that these issues are presently before the Alabama Supreme Court. *Compare Flowers v. Bennett*, Case No.2002–1096–PR (Circuit Court of Montgomery Coun-

ty, Ala., order filed April 23, 2002) (granting preliminary injunction) *with Larkin v. Bennett*, Case No. CV–2002–1171 (Circuit Court of Montgomery County, Ala., order filed April 30, 2002) (denying temporary restraining order).

and involuntary disqualifications was in force and effect as of November 1, 1964.

### D. Flowers' Claims

After intervening, Flowers filed cross-claims against State Defendants and counterclaims against Plaintiff Connors (but not Plaintiff Grisham). During the trial, Flowers agreed that if this court found against Plaintiffs and denied the relief requested by Plaintiffs, there would be no need, at this particular time, to reach any of Flowers' claims against those parties. In light of our denial of the relief requested by Plaintiffs, this court therefore dismisses without prejudice the counterclaims and cross-claims of Defendant–Intervenor Flowers.

### III. CONCLUSION

In conclusion, the court finds against Plaintiffs on their Amended Complaint and denies all relief requested by Plaintiffs.[14] The court dismisses without prejudice the counterclaims and cross-claims of Defendant–Intervenor Flowers. The court taxes costs against Plaintiffs. The court directs the Clerk to enter instanter final judgment in accordance with these rulings.

MYRON H. THOMPSON, District Judge, concurring.

I fully agree with the court's opinion but add these comments. During oral argument in this case, counsel for the Alabama Secretary of State lamented out of apparent frustration that the federal courts seem to believe that, with regard to the efforts of state officials to comply with § 5,

"no matter what we do, we do it wrong." This comment, while understandable, is not correct. I am aware, from evidence in other § 5 cases, that, in the 1980s and '90s, Alabama state officials and their legal staff engaged in a Herculean effort to comb state statutes and regulations and then submit to the United States Attorney General those that the State believed needed § 5 preclearance. But for this effort, there would have been many, many more § 5 cases filed. The fact that courts have found, as in this case, that certain unwritten voting-related practices were not precleared and that certain voting-related submissions were too ambiguous to be viewed as meeting preclearance requirements, *e.g., Boxx v. Bennett,* 50 F.Supp.2d 1219 (M.D.Ala.1999) (three-judge court), does not detract from the fact that what the State did was worth the effort. Therefore, the State of Alabama has, in fact, gotten it right, and, for this, the State and its legal staff (including, in particular, the attorney who made the above comment and who, as I know, is personally responsible for the much of the effort made in the 1980s and '90s) are to be commended.

---

**14.** The challenge to Flowers' qualifications relates to whether he has satisfied the applicable residency requirements. The court notes that a person wishing to challenge Flowers' legal qualification to hold office will not be left without remedy by virtue of the Alabama Republican Party and the Secretary's failing to act within the time limits set by statute prior to the primary election. The same ground of non-eligibility may be raised in a post-election contest. *See* Ala.Code §§ 17–16–70 and 17–16–71.